GARDEN CEMETERY CORPORATION *vs.* EDMUND K. BAKER.

Suffolk.    March 16, 1914. — June 17, 1914.

Present: RUGG, C. J., LORING, SHELDON, & CROSBY, JJ.

*Equity Jurisdiction,* For alternative relief, To remove cloud on title, To redeem from tax sale, Laches.    *Tax,* Assessment for street watering.    *Cemetery.* *Equity Pleading and Practice,* Bill, Decree.    *Words,* "Finding."

It is not a valid objection to a bill in equity that the plaintiff seeks to remove a cloud from the title to certain land created by what he alleges to have been a sale for the collection of a tax illegally assessed, and also, in case the sale should be declared to have been valid, seeks to redeem the land from the sale in accordance with St. 1909, c. 490, Part II, § 76.

A bill in equity, which was filed in June, 1911, by a private cemetery corporation to remove a cloud upon its title to the cemetery alleged to have been created by a sale in August, 1905, for the collection of a tax assessed illegally in 1902, and which contains appropriate allegations and prayers for redeeming the land from the tax if the sale shall be adjudged to have been valid, is brought within the six years allowed by R. L. c. 13, § 75, as amended by St. 1905, c. 325, § 3, and is not barred by laches although the purchaser at the sale paid taxes assessed to the plaintiff for the years 1904 and 1905, and taxes upon the premises were assessed to such purchaser in 1906 and 1907, and he paid them.

The exemption of cemeteries from general taxation by St. 1909, c. 490, Part I, § 5, cl. 8, does not exempt them from local assessments for special advantages arising out of public improvements.

A private cemetery corporation is subject to a tax assessed upon its cemetery under R. L. c. 26, §§ 26, 27, for street watering if the amount of the tax assessed upon the property is not in excess of the benefit conferred upon the property by the street watering.

It cannot be said as a matter of law that the real estate of a private cemetery corporation is not benefited by the watering of streets adjacent to the cemetery.

In a suit in equity involving the question, whether a tax for street watering assessed to a private cemetery corporation upon its cemetery is a legal assessment, where there is no question as to the propriety of the amount of the tax, the question, whether a benefit was conferred upon the cemetery by the street watering, is one of fact to be determined upon the evidence.    In this case a finding, which was construed to be that no such benefit was conferred, was held not to have been clearly wrong.

In a report made by a judge of the Superior Court in a suit in equity brought by a private cemetery corporation for the removal of a cloud upon its title to its cemetery alleged to have been created by a sale for the collection of a tax for street watering purposes illegally assessed because the land had not been benefited by the watering of the streets, the judge, after a detailed statement of facts in a report, concluded as follows: "Upon the foregoing facts a decree is to be entered

in favor of the plaintiff for the cancellation of the said deed, upon the ground that the tax deed . . . was invalid. . . . If my order is correct, a decree is to be entered in accordance with the finding, with costs; otherwise such decree is to be entered as justice and equity may require." *Held,* that the word "finding" must be given its ordinary meaning of the ascertainment of a fact in a judicial proceeding; and that as a matter of interpretation the language quoted must be held to mean that the judge found as a fact, in view of all the circumstances, that no benefit was received by the land from the street watering.

In the foregoing case, the rescript directed that a decree be entered for the plaintiff, "unless within thirty days . . . on motion by the defendant to the judge who heard the case, further hearing is granted on the ground that the report previously made was not intended as a finding that as a fact the plaintiff's cemetery was not benefited by the street watering."

BILL IN EQUITY, filed in the Superior Court on June 16, 1911, praying that sales of the plaintiff's cemetery by the collector of taxes of the city of Chelsea for the payment of taxes assessed in 1902 and 1903 for street watering should be set aside as invalid, or that, if they should be adjudged to have been valid, the plaintiff should be permitted to redeem.

The suit was heard by *Jenney,* J., who found the following among other facts: The plaintiff was incorporated under St. 1841, c. 114. The land owned and maintained by it as a cemetery in Chelsea is about three and one half acres. The city of Chelsea assessed a tax to the plaintiff as the owner of that property for street watering in the years 1902, 1903, 1904 and 1905. In August, 1905, the premises were sold by the collector of taxes to the defendant for non-payment of the taxes so assessed for 1902 and 1903. The defendant paid the taxes so assessed for 1904 and 1905. Such a tax was assessed to the defendant for the years 1906 and 1907, which he paid.

No question was made as to the formal regularity of the proceedings relative to the assessment or sale.

Previous to May 1, 1902, the premises had been divided into burial lots and single graves, with appropriate walks. There were no driveways. The entire area was divided into lots and graves, except the parts reserved and used for paths. All the burial lots had been sold. There were then over nine thousand bodies interred in the cemetery. Some single graves then remained unsold. They were scattered throughout the cemetery and did not form any parcel of substantial size. All single graves remaining on May 1, 1902, and all parts of lots repurchased since that time, had

been sold at the time of the hearing, and all single graves were in use for burial purposes. There were lots and portions of lots remaining in which there were no interments and which at some future time may be offered to the corporation by the owners, in case the owners thereof should desire to sell the same to the corporation, and the corporation should desire to purchase. Previous to May 1, 1902, it had been the practice of the trustees controlling the business of the corporation to buy back from owners parts of burial lots previously sold, where no interments had been made, and to divide such lots into single graves and sell them at a price in advance of that paid for the purchase of the lots. This practice was continued after May 1, 1902, and many graves were sold in this way after that date.

Money not used by the plaintiff for maintenance purposes had been invested, and the interest was used and was to be used only in paying the running expenses of the cemetery. Except from the sale of graves, there was no means of paying the expenses of care and maintenance of the grounds except from this fund. No dividends ever had been declared. Other than its invested funds the corporation had no income except such as it received in the sale of graves.

In 1902 there were about forty-five trees growing in the cemetery, and the greater part of it was grassed over. The corporation has taken care of so much of the cemetery as has not been sold, and also of some lots where there is an agreement as to perpetual care. It did not expend any money in preventing dust from coming into the cemetery from the street, and the watering of the street by the city was the only thing done to prevent such dust. There were streets on three sides of the cemetery. On two sides they were macadamized. In the street on the third side was a line of street cars with double tracks, and the street was paved between the tracks. On the fourth side of the cemetery were dwelling houses, the rear of the lots on which they were situated abutting on the cemetery. The opposite sides of the streets surrounding the cemetery were built up with houses in 1902, so that the cemetery constituted a space open to the air like a park, and people were allowed to go in and walk about.

Using the language quoted in the opinion, the judge reported the case for determination by this court.

*W. A. Parker,* for the plaintiff.

*J. W. Allen,* (*H. W. Packer* with him,) for the defendant.

RUGG, C. J. This is a bill in equity to remove a cloud on the title to land created by tax sales and deeds alleged to be invalid. Relief may be granted in appropriate cases for that cause under the general principles of equity. *Smith* v. *Smith,* 150 Mass. 73. The bill also contains apt allegations and prayers for redeeming from these sales under R. L. c. 13, § 75, as amended by St. 1905, c. 325, § 3 (now St. 1909, c. 490, Part II, § 76) provided the tax sales are held to be valid. *Barker* v. *Mackay,* 168 Mass. 76. No objection has been or rightly could be made to joining these two grounds for an equitable remedy in one suit and relying upon the one to which the plaintiff may be found to be entitled. The only question open in this proceeding is whether the assessment of the tax was legal. No inquiry can be made as to the propriety of its amount.

The plaintiff is not precluded by the lapse of time from maintaining this bill either under the statute or under general chancery jurisdiction. No one has been misled to his harm in any legal sense by the delay, and the situation has not materially changed. The suit was instituted within the time limited for redemption in the statute, provided equity requires that redemption should be allowed. The doubt whether a cemetery was liable to such assessments, and hence whether the sales to satisfy them were valid, was so well founded that the plaintiff ought not to be precluded from the right to redeem, even if its property be found to have been subject to the assessments.

The point at issue is whether land, devoted to the purposes of a burial ground and belonging to a private cemetery corporation organized under the general laws, is liable to an assessment for street watering made under R. L. c. 26, §§ 26, 27, as amended by St. 1909, c. 440, § 2. The constitutionality of this act is established so far as it applies to ordinary city or town estates. *Sears* v. *Boston,* 173 Mass. 71. *Corcoran* v. *Aldermen of Cambridge,* 199 Mass. 5.

No express exemption relieves the plaintiff. By R. L. c. 12, § 5, cl. 8, (now St. 1909, c. 490, Part I, § 5, cl. 8,) cemeteries are exempted from taxation so long as they are dedicated to the burial of the dead. But that exemption refers only to taxation

imposed for the general public purposes of the sovereign power and does not include exemption from local assessments for special advantages arising out of particular improvements of a public nature undertaken by government, such as the laying out of streets and sewers and like matters. *Boston Seamen's Friend Society* v. *Mayor & Aldermen of Boston,* 116 Mass. 181. *Worcester Agricultural Society* v. *Mayor & Aldermen of Worcester,* 116 Mass. 189. *Boston Asylum & Farm School for Indigent Boys* v. *Street Commissioners,* 180 Mass. 485. Street watering belongs to this class of special assessments. *Phillips Academy* v. *Andover,* 175 Mass. 118.

The plaintiff contends that it is exempt from the operation of the act because it says that as matter of law a cemetery can receive no benefit from the watering of adjacent streets, and because under a betterment statute like this no assessment can be levied in excess of the benefit actually conferred, and that, as there can be no benefit, there can be no assessment. It rests this contention upon the ground that the private benefit conferred by such a public service as street watering must be of a character to enhance the rental or sale value of the real estate, or to confer some actual or potential pecuniary advantage upon the owner, and that cemetery property, having no market value, cannot in the nature of things receive benefits of that sort. But this position is not tenable. The plaintiff has not obligated itself to perform public duties. It is not by law required to maintain a cemetery for any particular portion of the public other than those to whom it may sell lots. Its power is unrestricted to limit its lot owners by by-law or otherwise. *Milford* v. *County Commissioners,* 213 Mass. 162. As was said in *Donnelly* v. *Boston Catholic Cemetery Association,* 146 Mass. 163, at page 166: "It would be acting strictly within its powers if it sold all its lands for full price." It may sell or mortgage its real estate without special legislative authority, such authority being conferred by general law. R. L. c. 78 § 2; c. 109, § 6. See *Sweetser* v. *Manning,* 200 Mass. 378. In this respect it differs from public service corporations. *Attorney General* v. *Haverhill Gas Light Co.* 215 Mass. 394. The plaintiff is not exempt from such assessment as a public corporation. See *Boston* v. *Boston & Albany Railroad,* 170 Mass. 95. The plaintiff belongs to the class of private cemetery corporations which, although clothed with certain important privileges, belong

nevertheless to their legal and beneficial owners, who are at liberty to appropriate or sell them for general purposes.

It is conceivable that cemetery property may receive a direct and peculiar benefit from the watering of adjacent streets. The freedom from clouds of offensive dust enjoyed by those who have occasion to visit it, the refreshment of its vegetation and the general cleanliness of its trees, monuments and cenotaphs, allaying the heat of the atmosphere and rendering it fresher and more wholesome to those having occasion to visit it, all are elements of direct and special benefit. These advantages, if found to flow from street watering, well might render the cemetery more attractive and enable the plaintiff to sell its remaining lots more readily or at a higher price, or to charge more for annual care of lots already sold, than would be possible without them.

The facts presented are or may be found to be quite different from those disclosed in *Mount Auburn Cemetery* v. *Mayor & Aldermen of Cambridge,* 150 Mass. 12, where the land by legislative act was dedicated perpetually to the uses of a burial ground, its conveyance or use for any other purpose forbidden and its income from sales of lots required to be devoted to its improvement, and all private profit prohibited. Yet there the question was left open whether, if a public sewer were needed and used for the benefit of the land as a place for burial, an assessment therefor might not be levied, even though it was held that Mount Auburn, by reason of special legislative acts, could not be subjected to a general assessment for a sewer which it did not use. The plaintiff is a corporation with quite different powers than those conferred upon the corporation there before the court.

But while it could not have been ruled as matter of law that the plaintiff could not be liable to a street watering assessment, it cannot be said as matter of law to be so liable. Whether its cemetery property is so subject or not depends upon the question whether in truth it does receive thereby a special benefit for the use to which it is devoted. It is plain that the ordinary dwelling or business establishment would be benefited by street watering. It is not equally plain that a cemetery would receive a legal benefit. Whether it would or not depends upon an ascertainment of the fact after a weighing of the factors which have been enumerated and all others which may be material. The physical fea-

tures of the land, the extent and nature of its adornment, its trees and flowers, the number and tastes of its visitors, together with other pertinent circumstances, all are proper for consideration in determining whether the valuable use of the cemetery may be enhanced by the watering of the streets upon which it abuts. Whether the plaintiff's cemetery was benefited in this sense is a fact to be determined upon evidence, and a finding upon this point should be made by the trial court. This conclusion follows from the statement of the controlling constitutional principles in *Sears* v. *Aldermen of Boston,* 173 Mass. 71, and *White* v. *Gove,* 183 Mass. 333, 336, 337.

The conclusion that a cemetery may be liable to a special assessment of this general nature is supported by the great weight of authority. *Lima* v. *Cemetery Association,* 42 Ohio St. 128. *Buffalo City Cemetery* v. *Buffalo,* 46 N. Y. 506. *Gouverneur Village* v. *Gouverneur Cemetery Association,* 136 App. Div. (N. Y.) 37. *Mullins* v. *Mount Saint Mary's Cemetery Association,* 239 Mo. 681. *Philadelphia* v. *Union Burial Ground Society,* 178 Penn. St. 533. *Baltimore* v. *Green Mount Cemetery,* 7 Md. 517. *Bloomington Cemetery Association* v. *People,* 139 Ill. 16. *Seattle* v. *Mount Pleasant Cemetery Co.* 59 Wash. 41. See cases collected in 22 Ann. Cas. 1047, *et seq.* See *Meriden* v. *West Meriden Cemetery Association,* 83 Conn. 204. There are contrary authorities, resting generally, however, upon the interpretation of exemption statutes and not upon abstract principles. *Cave Hill Cemetery Co.* v. *Gosnell,* 156 Ky. 599. *Swan Point Cemetery* v. *Tripp,* 14 R. I. 199. *In re New York,* 192 N. Y. 459.

The statement of the terms of the report is this: "Upon the foregoing facts a decree is to be entered in favor of the plaintiff for the cancellation of the said deed, upon the ground that the tax deed hereinbefore referred to was invalid. . . . If my order is correct, a decree is to be entered in accordance with this finding, with costs; otherwise such decree is to be entered as justice and equity may require." It is not entirely clear whether this is a finding of fact or a ruling of law. If it was intended as a finding of fact, it cannot be pronounced plainly wrong, and under the familiar rule must stand. As matter of interpretation we are of opinion that the absence of any express reference to a ruling made which by implication would mean a conclusion based upon

a decision of the law, and the statement that his "order" (which was an order for a decree) was "in accordance with this finding," indicates that the judge found as a fact, in view of all the circumstances, that there was no benefit received. "Finding" is a word which imports the ascertainment of a fact in a judicial proceeding, and commonly is applied to the result reached by a judge. Sometimes, however, as matter of interpretation it has been treated as a ruling of law. *Clapp* v. *Wilder,* 176 Mass. 332, 337. The parties in the case at bar have argued as if it were a ruling of law. As these questions of law were involved upon any aspect of the case, they have been determined. But, in view of the phrase of the report and its form, with a full narration of the facts, we treat it as a finding of fact that there was no benefit to the plaintiff's land by reason of the watering.

A decree, therefore, is to be entered in favor of the plaintiff for the cancellation of the deeds, on the ground that they were invalid, unless within thirty days from the entry of rescript on motion by the defendant to the judge who heard the case further hearing is granted on the facts, on the ground that the present report was not intended as a finding that as a fact the plaintiff's cemetery was not benefited by the street watering.

*So ordered.*