[Civ. No. 14504.   Second Dist., Div. Two.   Feb. 19, 1945.]

JACK HERMAN, Respondent, v. GERRY A. GLASSCOCK, Appellant.

Porter C. Blackburn for Appellant.

Cannon & Callister for Respondent.

MOORE, P. J.—In an action for damages resulting from a battery, judgment went against defendant in the sum of $1,000 as a compensatory award and $1,000 for punitive damages. Defendant grounds his appeal upon the claims (1) that the evidence is insufficient to support the compensatory relief and (2) that plaintiff, having been the aggressor in the encounter, is not entitled to damages by way of punishment.

On the morning of August 21, 1941, both parties were proceeding in their automobiles eastward along Olympic Boulevard in Los Angeles. At the intersection of La Brea Avenue defendant's car struck and injured the rear right fender of plaintiff. From the point of collision the parties proceeded parallel to each other for about one mile. The temper of one was aroused by the injury done his property while the temper of the other was stirred by the intemperate language addressed to him by his agitated disputant. In the war of words one was denounced in epigrammatic terms as a son of Abraham, who in turn reviled his adversary with the terse epithet which signifies the want of an immediate legitimate paternal ancestor. When they arrived at the first automatic traffic signal, at Highland Avenue, plaintiff's car stopped immediately behind that of defendant. The latter alighted, walked back and drove his pocket knife into plaintiff's left hand which was resting on the door of his own conveyance. Defendant reentered his own vehicle and proceeded on his way to the intersection of Rimpau Boulevard with plaintiff in pursuit. The traffic having again come to a halt, plaintiff disembarked, and, holding his injured hand, ran forward to defendant, exhibited the wound and invited the defendant to inspect his handiwork. Ignoring the injured member defendant hastily made his departure as the signal changed to ''go'' while plaintiff directed his course to the Wilshire Police Station. First aid was there rendered to the unfortunate man, after which he was conveyed by ambulance to the Georgia Street Receiving Hospital. The index finger and its tendons had been cut. The surgeons undertook to service the maimed organ by applying sixteen stitches to the gash. At the time of the trial the strength in plaintiff's hand had materially lessened, his arms tired easily, and he did not have much use of his index and second fingers, which he could not close. Neither could he feel the second knuckle. The plaintiff testified that, in addition to the wound and its treatment at the hospital, he had hardly slept two hours a night during the

seven weeks following the assault; that he suffered almost a year with his hand and twenty-five months later his two injured fingers were still stiff and the use of the arm was impaired. He detailed the time lost from his work and the expense of his physician, but inasmuch as no finding is made of any special damage, discussion of those items will be omitted.

Defendant contradicted plaintiff upon the point as to which was the aggressor. He testified that the first time either left his automobile was at the Rimpau intersection where plaintiff came to defendant and ''jammed his fist through the car''; that he had to dodge to prevent plaintiff's striking him in the face; that plaintiff's hand came up and ''automatically struck the knife'' which defendant had taken from his pocket when he saw plaintiff approaching.

However, the trial court having heard all of the witnesses made its finding that ''the defendant willfully and maliciously made an assault upon the plaintiff herein by taking his pocket knife and severely cutting plaintiff's left hand, severing two tendons, to the plaintiff's loss in the sum of $1,000.00.''

Defendant attacks this finding on the ground that the evidence is ''too weak upon which to base an award for compensatory damages for permanent injury.'' Such assignment will be considered in the light of the doctrine that the intendments favor the judgment and that the finding is sufficiently supported if the record contains substantial evidence and reasonable inferences favorable to respondent may be drawn. (*Bellman* v. *San Francisco H. S. District,* 11 Cal.2d 576, 581 [81 P.2d 894]; *Hind* v. *Oriental Products Co., Inc.,* 195 Cal. 655, 661 [235 P. 438].)

Notwithstanding that there is no finding that plaintiff suffered a permanent injury defendant attempts to establish that the $1,000 award was based upon a finding of permanent injury. In order to do this he invokes the language of the court in discussing the evidence at the conclusion of the trial. No such resort may be had where the finding is unambiguous and the record supports it. The finding is the ascertainment of the fact by the judge. (*Garden Cemetery Corp.* v. *Baker,* 218 Mass. 339, 346 [105 N.E. 1070, Ann. Cas. 1916B 75].) It is the court's decision upon the facts. (*Williams* v. *Giblin,* 86 Wis. 648 [57 N.W. 1111].) It is the court's best judgment of what the entire evidence establishes. (*Marks* v. *Dorkin,* 104 Conn. 660 [133 A. 915].) Its purpose is to make the case easily reviewable ''by exhibiting the exact

grounds upon which the judgment rests." (*Savings & Loan Society* v. *Burnett,* 106 Cal. 514 [39 P. 922].) ▆ Under our system it is mandatory that the superior court make and file its finding of the ultimate fact on each material issue created by the pleadings. (*Haffenegger* v. *Bruce,* 54 Cal. 416.) ▆ It follows that the function of the finding is paramount, in presenting a fact in the case.

The reasoning of the judge in announcing his decision is not such part of the record as may be used for the purpose of establishing a fact in the case when findings are filed. (*Union Sugar Co.* v. *Hollister Estate Co.,* 3 Cal.2d 740 [47 P.2d 273] ; *In re Lasker,* 51 Cal.App.2d 120, 122 [124 P.2d 72] ; *Goldner* v. *Spencer,* 163 Cal. 317, 320 [125 P. 347] ; *Estate of Felton,* 176 Cal. 663 [169 P. 392].) Since the entire record of the evidence and the findings are before us the language employed by the judge in his extemporaneous announcement of his findings can serve no office. The vocal meditations of the jurist in deriving his determination of the ultimate fact is a personal privilege and is not to be taken as a part of the legal record to be confused with his "opinion" whereby he applies the law to the facts found. His soliloquy concerning the pros and cons of the evidence might be a protracted rehearsal and appraisal of the testimony of each witness or an abbreviated censure of both parties to the action. But such utterance would have no more virtue in illuminating the appellate court than would the discussions of jurors in reaching their verdict. If a witness be inconsistent or inject incompetent testimony it is the function of the trier of facts to strain the dross from the refined and thereupon to determine the ultimate fact as the basis for decision.

▆ Defendant attacks the finding on the further ground that the testimony of plaintiff that two tendons of his left hand were severed by the cut was such as he was not competent to give; that it required the testimony of an expert to prove that a tendon of the hand has been severed. With this contention we do not agree. If it appears from the testimony of an injured layman that he has suffered a cut across his hand; that its surgery required sixteen stitches; that two fingers are stiff after the lapse of two years following the assault, it is no abuse of the judicial function to find that one or more tendons had been severed. Such a fact is one within the grasp of the common mind and does not require expert proof. ▆ It is true that where the symptoms detailed to the court by a lay

witness are wholly subjective, as in the cases cited by defendant (*Webb* v. *Union Ry. Co. of New York City*, 44 App.Div. 413 [60 N.Y.S. 1087]; *Vaden* v. *Holmes*, 39 Cal.App.2d 580 [103 P.2d 1002]; 115 A.L.R. 1146; *Oliveira* v. *Warren*, 24 Cal.App.2d 712 [76 P.2d 113]), the court would not be warranted in making a finding of the permanency of the injury without the aid of expert testimony. ██ But the finding of severed tendons was not based upon proof of subjective symptoms: rather upon the history of an ugly wound, of its surgery, of its resultant pain, of its protracted stiffness. Such testimony may be given by a nonexpert whose senses are adequate to the purpose. The last mentioned authorities except the Oliveira case are not pertinent. In each of them the court instructed the jury that the amount of recovery might be based upon pain and suffering which the plaintiff would be certain to suffer in the future from his injuries although there had been introduced no evidence of a permanent injury. The Oliveira case affirmed plaintiff's recovery for future pain and suffering.

██ Neither is there any virtue in the claim of defendant that the testimony of plaintiff should be distrusted because he did not present at the trial the physicians who had treated his hand. ██ No litigant should be denied relief to the extent of his proof merely because he has alleged facts which require expert testimony, or because his pleading contains one or more counts for which no proof is offered. He is entitled to a judgment upon those facts alleged and proved without regard to the allegations not found to be true. If defendant at the trial deemed himself aggrieved by reason of the failure of plaintiff to have his physician present at the trial it was incumbent upon him so to declare and to request a continuance for the purpose of enabling him to introduce the expert's testimony. ██ Because of his chagrin at plaintiff's recovery in spite of his failure to prove the permanency of his injuries, defendant may not now invoke the presumption that the evidence offered should be viewed with distrust because the proof was less satisfactory than that which a physician might have given. No other proof was necessary to establish the finding made. Even though the physician had testified to the absence of a permanent injury the court would not for that reason have been required to deny recovery for the injuries described in the finding.

Defendant must fail in his contention that the award of exemplary damages was not justified. The court found that defendant inflicted an ugly and painful wound upon plaintiff with a knife following a quarrel. This clearly implies a finding that defendant, on a public highway, was the aggressor in maiming a person who had done him no wrong and whose behavior when assaulted did not invite physical punishment. The allowance of exemplary damages is proper when a battery has been wantonly and maliciously committed. (*Marriott* v. *Williams*, 152 Cal. 705 [93 P. 875, 125 Am.St. Rep. 87].) It is a question for the triers of the facts. If they believe that a dangerous weapon was used and that the assault was wanton and unprovoked and caused serious injury, they should give exemplary damages to discourage the use of dangerous weapons. (*Porter* v. *Seiler*, 23 Pa. 424 [62 Am.Dec. 341].)

The judgment is affirmed.

Wood (W. J.), J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 19, 1945.