[Civ. No. 5340. Fourth Dist. May 10, 1956.]

ROŸ C. KAISER et al., Appellants, v. MARGARET MANS-
FIELD, Defendant and Respondent; CLARA HOLE-
CHECK, Intervener and Respondent.

Roy C. Kaiser in pro. per. and Roland T. Williams for Appellants.

Thomas A. Wood, Larwill & Wolfe and Borton, Petrini, Conron & Brown for Respondents.

CONLEY, J. pro tem.*—Roy C. Kaiser, an attorney at law, and his wife, Geraldine C. Kaiser, brought this action to quiet title to 140 acres of land in the Antelope Valley. The defendant and cross-complainant, Margaret Mansfield, and the plaintiff in intervention, Clara Holecheck, resisted the suit, claiming that they were defrauded and victimized by one Lees, predecessor in interest of and an alleged co-conspirator with the plaintiffs, not only as to the specific parcel of property described in the complaint but as to the entire 640 acres of which it formed a part.

The trial resulted in a complete and indeed overwhelming victory for the cross-complainant and the plaintiff in intervention. They were held to be the owners of the contract covering the whole 640 acres including the 140 acres described in the complaint and plaintiffs were ordered to deed and assign all interest in the land and the contract to them, accompanied however by a contemporaneous payment by Margaret Mansfield of the sum of $2,831.52 to the clerk of the court for the benefit of the plaintiffs.

Respondents' major difficulty is logical rather than moral; they have stood on two irreconcilable theories, first that the property has always been held in trust for them, and

---

*Assigned by Chairman of Judicial Council.

secondly that they are the owners by virtue of a writ of execution issued on a judgment secured against the original alleged trustee on a note given by him to cover payments which respondents claim made him a trustee. Respondents long ago elected to follow a course which was wholly inconsistent with the trust theory; they brought actions to enforce the remedy selected by them, recovered judgments thereon and enjoyed, in part at least, the fruits of those judgments. It is now too late for them to repudiate their election. The trust theory of recovery must fail, and in view of the conflict in the findings caused by the simultaneous adoption by the trial court of the two theories, it will be necessary to remand the case for trial and disposition on the basis of the simplified issues.

On July 12, 1948, Joseph S. Lees, a real estate operator, and another person named Ortez secured an option to buy the 640 acres here involved from J. W. Eddington, for a total purchase price of $57,600; Mr. Lees gave a check for $1,000 for the option, drawn on the 9th Street Branch of the Bank of America National Trust and Savings Association at Los Angeles. But not having sufficient money in his account to cover his check, Lees induced Margaret Mansfield to advance him $1,000 for the purpose on July 16, 1948.

Lees worked in the same Los Angeles building and suite where the plaintiff Kaiser had his offices, being employed by Kaiser as a real estate broker. Margaret Mansfield was a stenographer in the same suite; she occasionally performed secretarial services for Kaiser and took messages and telephone calls for him; Kaiser also represented her as an attorney in the years 1948 and 1949. Clara Holecheck, a close personal friend of Margaret Mansfield, was a manual laborer in a factory. Lees had talked with Mrs. Mansfield, before getting the option, about buying land for her and Mrs. Holecheck in Antelope Valley, and in June, 1948, he told both women he would purchase property of this character for them. On August 20, 1948, Lees and Eddington executed a contract providing for the sale to Lees of the 640 acres; on August 24 Margaret Mansfield paid him an additional $1,000, and on August 25, she handed him two checks of Mrs. Holecheck for $800 and $1,700. Thus, a total of $2,000 in money was advanced to Lees by Margaret Mansfield and $2,500 by Mrs. Holecheck. The investors afterwards asked on numerous occasions for some kind of paper evidence to show their interest in the land, but without obtaining satisfaction. The

record is somewhat murky as to how the women thought the deal was to be developed; there was talk about subdividing the acreage, and other talk about the formation of a corporation to handle the whole transaction.

In any event, on April 16, 1949, Lees gave the intervener, Clara Holecheck, his one-year promissory note for $2,500 to cover the moneys that she had turned over to him, and on April 16, 1950, he paid her $100 interest on the note. Under date of April 17, 1950, Mrs. Holecheck acknowledged receipt of the interest by letter and wrote: "I hereby give written demand for payment in full of the above note which was due April 16, 1950."

In the meantime, in the month of August, 1949, after a conference between the women and Lees at which Kaiser was present, the two women had taken their claims to the district attorney in Los Angeles; an investigation was conducted by that office and the plaintiff, Kaiser, then represented Lees, but no criminal complaint was actually issued. In October of 1949, while the district attorney was still investigating, Lees told Mansfield and Holecheck that he had assigned the contract for the purchase of the land to another person; the record shows that an assignment was in fact made by him to a Mrs. Marion Elmira Fisher.

In 1950, the two women hired an attorney to prosecute their claims against Lees. On March 7, 1951, Clara Holecheck filed an action against him in the Municipal Court at Los Angeles for $2,500, and on October 10, 1951, she secured a judgment for $2,650 and $100 attorney fees. Margaret Mansfield, after writing Lees a letter on April 16, 1949, demanding the return of her money, also filed suit against him in the same court for $2,000 and on November 27, 1951, she secured a judgment for $2,360.14, principal and interest together with costs of suit.

On August 8, 1950, Marion Elmira Fisher transferred the agreement for the sale of the real property to one J. A. Long.

On December 15, 1952, the Sheriff of Kern County levied an execution issued by the Municipal Court of Los Angeles in the case of *Mansfield* v. *Lees* on all of the right, title and interest of J. S. Lees in and to the 640 acres; and on January 19, 1953, he held the sale at which Margaret Mansfield bid the full amount of her judgment, costs, accrued interest and expenses in the sum of $2,550.77.

On December 19, 1952, the Kern County sheriff also levied an execution on all of the right, title and interest of J. S.

Lees in and to the land, by virtue of the Los Angeles Municipal Court judgment in *Holecheck* v. *Lees,* and at the sale held on January 19, 1953, 10 minutes after the sale in *Mansfield* v. *Lees,* Margaret Mansfield, who held an assignment of this judgment, bid in the property for the full amount due thereon, or $3,065.99; on February 11th, 1953, the judgment was wholly satisfied of record.

On August 13th, 1953, the plaintiffs secured an assignment of the contract from J. A. Long and wife, and on December 22, 1953, the Lees executed a quitclaim deed and an assignment of their right to redeem the property to the plaintiffs. The Kaisers redeemed the property from the sale under the execution in *Mansfield* v. *Lees* (the senior execution lien) paying $2,831.52 thereon. On January 21st, 1954, the sheriff of Kern County issued a certificate of redemption to the Kaisers as to that sale.

On March 18, 1954, the Kern County sheriff issued a deed to Margaret Mansfield pursuant to the sale on execution under the judgment in *Holecheck* v. *Lees.*

The court's findings of fact are to the effect that Lees was given the sum of $4,500 by Margaret Mansfield and Clara Holecheck to enter into the agreement with Eddington for the purchase of the real property for them; that after securing such a contract in his own name through the use of their money, he fraudulently transferred the instrument on or about October 24, 1949, to Mrs. Fisher without consideration and with knowledge on her part of the trust relationship between Lees and Mansfield and Holecheck; that the transfers, in turn, to Long and the Kaisers were similar and that the Kaisers took the property with full knowledge of the fraud and of the existence of the trust; that all of the persons involved in the chain of title "conspired to cheat and defraud the said Margaret Mansfield and said Clara Holecheck out of said agreement and out of said real property, and that all of said named persons knew that the said Margaret Mansfield and said Clara Holecheck were the true owners of said agreement and said real property and knew that said agreement and said real property were being held in trust for the said Margaret Mansfield and said Clara Holecheck."

The findings specify further fraud in the representation of Lees to the respondents that he had sold and assigned the contract to a bona fide purchaser and that they did not discover the fraud until 1954. The municipal court judgments are described in the findings as having been secured

by the two women while believing the fraudulent representations as to the bona fides of the contract assignment.

It is next found that the Kaisers obtained a deed to the 140 acres from the estate of J. W. Eddington and that they hold possession of all of the property.

The findings of fact terminate with a summary and erroneous general finding with respect to various allegations in the answer of Margaret Mansfield, her cross-complaint and the Holecheck complaint in intervention and with respect to the various defenses set up by cross-defendant and the defendant in intervention as follows:

## "XI

"All of the allegations of the answer of said Margaret Mansfield to the complaint herein, the cross-complaint of the said Margaret Mansfield and the complaint in intervention of said Clara Holecheck, not inconsistent with the above findings, are true and correct, and all of the allegations of plaintiffs' complaint and their answer to said cross-complaint and their answer to said complaint in intervention, which are inconsistent with these findings, are untrue."

This erroneous method of general coverage of numerous important factual issues would alone necessitate a reversal of the judgment. Without taking the space for a meticulous and detailed analysis of the pleadings, it will suffice to point out that the findings fail to determine numerous allegations of fact and that the answers to the cross-complaint and to the second amended complaint in intervention contain important affirmative defenses upon which the trial court makes no findings. As was said in the concurring opinion of Mr. Justice Thornton in the early case of *Goodnow* v. *Griswold*, 68 Cal. 599, 603-604 [9 P. 837]:

"The statute devolves on the lower court the labor and duty of finding facts. This such court cannot turn over to this court, or any other tribunal or person. The parties litigant have a right, a substantial right, to have the facts found by the court *a qua*. They have a right, secured to them by the statute, to have the judgment of that court as to the facts found to exist."

 It is elementary that a failure to find on all material issues raised by the pleadings is ground for reversal. (*Parker* v. *Shell Oil Co.*, 29 Cal.2d 503, 512 [175 P.2d 838]; *Fairchild* v. *Raines*, 24 Cal.2d 818, 830 [151 P.2d 260]; *Herman* v. *Glasscock*, 68 Cal.App.2d 98, 101-102 [155 P.2d 912]; *People*

v. *Ocean Shore R. R.,* 22 Cal.App.2d 657, 659 [72 P.2d 167];
*Powell* v. *Johnson,* 50 Cal.App.2d 680, 683 [123 P.2d 875];
*People* v. *One 1940 Chrysler,* 77 Cal.App.2d 306, 315 [175
P.2d 585]; *Sturdevant* v. *Sturdevant,* 3 Cal.App.2d 443, 446
[39 P.2d 433]; *Severance* v. *Knight-Counihan Co.,* 29 Cal.2d
561, 576 [177 P.2d 4, 172 A.L.R. 1107]; *Clements* v. *Lanning,*
89 Cal.App.2d 817, 820 [202 P.2d 98]; *Andrews* v. *Cunningham,* 105 Cal.App.2d 525, 528 [233 P.2d 563]; *Martin* v.
*Chernabaeff,* 124 Cal.App.2d 648, 655 [269 P.2d 25].)

The conclusions of law are to the effect that Margaret Mansfield and Clara Holecheck at all times since August 20, 1948, have been and they now are the owners of the agreement of sale, that J. S. Lees and his succeeding assignees have held the agreement in trust for Mansfield and Holecheck and that the latter are entitled to have their title quieted, to be let into possession and to receive an assignment of the contract and a deed to the 140 acres and any other of such lands title to which the Kaisers have acquired in the meantime. The conclusions of law state that Margaret Mansfield should be required to pay $2,831.52 which was the amount paid by the Kaisers in redeeming the land from the execution sale in the municipal court action of *Mansfield* v. *Lees.*

The judgment is fundamentally unsound and cannot stand in its present form, because it was rendered without giving due weight to the compelling effect of the election of remedies made by Margaret Mansfield and Clara Holecheck as evidenced by the bringing of actions by them in the Los Angeles Municipal Court, the subsequent acquisition by them of judgments therein and their enjoyment of the fruits thereof. Certainly there is no question but that they advanced $2,000 and $2,500 respectively to Joseph S. Lees and that the initial payments on the option and contract were made with, or by virtue of, their funds. But the two women did not thereafter consistently maintain that the property was theirs. As early as April 16, 1949, Mrs. Holecheck departed from any such theory by accepting Lees' note for $2,500; she collected interest on the note one year later and after demanding payment in full, brought suit against him in the municipal court, securing a judgment for the full amount of her $2,500 advance, with interest, costs and attorney's fees. Mrs. Mansfield similarly demanded payment of her $2,000 by letter of April 16, 1949, and at a later date instituted an action and recovered judgment against Lees for $2,360.14 principal, interest and costs of suit.

These two creditors did not stop there, but secured writs of execution on the municipal court judgments and caused levies to be made on the very property which they now claim was theirs; they had the land sold by the sheriff, purchasing whatever interest Lees had for the full amount of the successive judgments; afterwards Margaret Mansfield accepted from the plaintiffs as successors of Lees the full amount which she had bid on the execution sale in *Mansfield* v. *Lees*. The municipal court judgments themselves were satisfied of record.

Whether it be considered that by their election of remedies the women rescinded their original contract with Lees and chose to sue him for the money previously advanced by them (*Gutterman* v. *Gally*, 131 Cal.App. 647, 653 [21 P.2d 1000]; *Bancroft* v. *Woodward*, 183 Cal. 99, 101 [190 P. 445]), or that in suing only for the moneys which they had turned over to Lees they conceded that the original transaction was legally nothing more than a loan, their course of action consistently pursued to judgment and execution is incompatible with the trust theory now urged by them and which the judgment in this case seeks to confirm.

Respondents argue that they were induced not to claim a trust at that time because of the fraud of Lees in telling them he had transferred the land contract to a bona fide purchaser. This may have affected in their own minds their prospects of successful recovery on a trust theory, and it may have led them to abandon the thought of trying to establish a trust, but it did not hide from them the existence of any *right* they may have had to bring such an action, or induce them by fraudulent representations to refrain from suit. It should be borne in mind that they had an attorney of their own, and that they had consulted with the district attorney of Los Angeles with respect to the Lees deal. We think there can be no escape from the conclusion that the cross-complainant and plaintiff in intervention by choosing their remedy, took a road fork and followed that road to its very end, and that they cannot now choose the alternative route. ■ Where either of two remedies is available to enforce the same right, a judgment on the merits in an action seeking one of them, bars a resort to the other (*Evans* v. *Horton*, 115 Cal.App.2d 281, 285 [251 P.2d 1013]; *Suisun Lbr. Co.* v. *Fairfield School Dist.*, 19 Cal.App. 587, 593, 594 [127 P. 349]). ■ And the acceptance of the fruits of a judgment by a party to an action is an election to abide the judgment. (*Turner* v. *Markham*, 152 Cal. 246 [92 P. 485]; *Pickens* v. *Coffey*, 136 Cal.App. 105 [27 P.2d

914]; *Estate of Baby,* 87 Cal. 200, 202 [25 P. 405, 22 Am.St. Rep. 239]; *Estate of Shaver,* 131 Cal. 219, 221 [63 P. 340]; *County of San Bernardino* v. *County of Riverside,* 135 Cal. 618, 620 [67 P. 1047].)

In this case, having elected to pursue to judgment an inconsistent remedy, the respondents cannot now successfully claim that the land is held in trust for them. (*Gray* v. *Gray,* 25 Cal.App.2d 484, 486 [77 P.2d 908]; *Hilborn* v. *Bonney,* 28 Cal.App. 789, 791 [154 P. 26]; *Hanly* v. *Kelly,* 62 Cal. 155, 159; *Evans* v. *Horton,* 115 Cal.App.2d 281, 285 [251 P.2d 1013]; *LeClercq* v. *Michael,* 88 Cal.App.2d 700, 703 [199 P.2d 343].)

Adopting another point of departure in attacking the problem, that of res judicata, the same conclusion is inevitable. At the time they instituted their respective actions for the recovery of the $2,000 and $2,500 the respondents had the opportunity by suitable allegations to urge the claim now made by them, but this they failed to do. They were not prevented from so doing by any extrinsic or collateral fraud, and as there must not only be a thread of decent consistency in the actions of litigants but an end to litigation itself there cannot now be a successful contention that the relationship of the opposed parties gave rise to a trust rather than a debt (*Thiriot* v. *Santa Clara Elementary Sch. Dist.,* 128 Cal.App.2d 548, 550 [275 P.2d 833]; *Pico* v. *Cohn,* 91 Cal. 129, 133-134 [25 P. 970, 27 P. 537, 25 Am.St.Rep. 159, 13 L.R.A. 336]; *Westphal* v. *Westphal,* 20 Cal.2d 393, 397 [126 P.2d 105]; *Gaskill* v. *Wallace,* 32 Cal.App.2d 354 [89 P.2d 687].)

As the judgment is firmly based in part on the unavailable trust theory and the findings are hopelessly interconnected on the theory of trust and the theory of title by purchase at the second execution sale, a reversal must be ordered.

It may well be that respective counsel will apply for leave to amend their pleadings in view of the simplification of issues and this should be allowed if timely application is made therefor. Aside from the elimination of the trust theory, we do not intend to limit the scope of the trial court's enquiry into the facts or the equities of the case upon retrial, but one or two guiding principles which may be applied depending on the factual showing at the second trial may appropriately be mentioned.

The effect of the levy and execution sale in the municipal court case of *Holecheck* v. *Lees* will depend upon what title the defendant, Joseph S. Lees, had in the realty on the date of

the sheriff's sale. (Code Civ. Proc., § 700; *Cook* v. *Huntley*, 44 Cal.App.2d 635, 639 [112 P.2d 889].) Apparently no attachment was ever run in either *Mansfield* v. *Lees*, or *Holecheck* v. *Lees*, and no recordation was made in Kern County of any abstract of judgment in either case. Reliance must therefore be placed by respondents upon the lien of the second execution. In view of the preceding execution sale in *Mansfield* v. *Lees* was there any title left in Lees which the purchaser acquired on the sale in *Holecheck* v. *Lees*?

*Clark* v. *Cuin*, 46 Cal.2d 386 [295 P.2d 401], holds that the lien of a judgment obtained by a judgment creditor after the sale of land at an execution sale but during the period it is still subject to redemption gives a right to the second judgment creditor to redeem pursuant to the provisions of section 701, subdivision 2, of the Code of Civil Procedure. It would seem that, assuming the ownership by Lees at the time of the sale under the first municipal court judgment (19 Cal.Jur.2d, "Executions," p. 498, § 113; *Lehnhardt* v. *Jennings*, 119 Cal. 192 [48 P. 56, 51 P. 195]; *Richman* v. *Bank of Perris*, 102 Cal. App. 71, 88 [282 P. 801]; *Spear* v. *Farwell*, 5 Cal.App.2d 111, 114 [42 P.2d 391]), Lees had an interest in the land after that sale which could be reached by execution and effectively disposed of at the second sale and which, after the redemption by Kaiser from the sale in *Mansfield* v. *Lees* and the consequent restoration of the title, would develop into good title in Mansfield through her purchase, confirmed by the sheriff's deed. (*Bristol* v. *Hershey*, 7 Cal.App. 738 [95 P. 1040]; *Bateman* v. *Kellogg*, 59 Cal.App. 464 [211 P. 46]; *Huling* v. *Seccombe*, 88 Cal.App. 238, 241 [263 P. 362]; *Stetson* v. *Sheehan*, 52 Cal. App. 353 [200 P. 387].)

It is proper, also, to point out that wholly apart from other issues, the trial court may well conclude upon an examination of the evidence, in the light of equitable principles, that the plaintiffs are not entitled to an unconditional decree quieting title to the land and to the contract in question. If upon retrial it should be determined that the plaintiffs and the intervening holders of title were in fact coconspirators with Lees and that they are charged with knowledge and notice of the use of respondents' money to buy the land and Lees' failure to carry out his promises to them, the equitable remedy sought in the complaint may be refused, or granted only conditionally upon the payment of the amount due to the two women on the sale under the execution in *Holecheck* v. *Lees*. (*Richman* v. *Bank of Perris, supra*, 102 Cal.App. 71, 83-88;

438

*Bateman* v. *Kellogg, supra,* 59 Cal.App. 464, 481; *Weyant* v. *Murphy,* 78 Cal. 278, 282 [20 P. 568, 12 Am.St.Rep. 50]; *Johnston* v. *San Francisco Sav. Union,* 75 Cal. 134 [16 P. 753, 7 Am.St.Rep. 129]; 19 Am.Jur. pp. 319, 323.)

The judgment is reversed.

Barnard, P. J., and Mussell, J., concurred.