[L. A. No. 12804. In Bank.—December 28, 1932.]

CORPORATION OF AMERICA (a Corporation), Appellant, v. JOHN M. EUSTACE et al., Respondents.

Freston & Files and Ralph E. Lewis for Appellant.

Charles W. Fourl and Edward W. Tuttle for Respondents.

THE COURT. — Appeal from a judgment rendered against plaintiff in an action brought by it for declaratory relief, and to determine title to a parcel of real property. The judgment was in favor of defendant Lotta A. Wagner and Sheriff Traeger, decreeing title in defendant Wagner and directing the sheriff to pay to the plaintiff or other holder of the sheriff's certificate of sale the sum of $13,-175.49, being the amount paid by defendant Wagner to the sheriff in redemption of the property from a mortgage foreclosure sale. Wagner and the sheriff were the only defend-

ants served or who appeared. The appeal is brought upon the judgment-roll alone.

The case was tried upon the pleadings and a stipulated set of facts which have been restated as the findings of fact of the trial court. As shown by such findings, they are in substance as follows: John M. Eustace and Katie M. Eustace, his wife, were the owners, as joint tenants, of lots 36 and 37 of Hollenbeck Park tract in Los Angeles. On March 31, 1922, they mortgaged both lots to the California Bank to secure an indebtedness of $10,000 evidenced by a three-year note. Thereafter, on October 28, 1925, the Hellman Bank, appellant's predecessor in interest, sued John M. Eustace for $8,492 and levied an attachment against his interest in lot 37. On August 22, 1927, this action resulted in a judgment in favor of said last-named bank and against Eustace for the sum of $8,814.60, which judgment was entered and recorded. Writ of execution thereunder was issued September 17, 1927, and a levy made on Eustace's interest in both lots 36 and 37, and on November 7, 1927, such levy was followed by a sale of Eustace's interest in lot 37 only to the Merchants National Trust & Savings Bank, the successor in interest of the Hellman Bank, upon a successful bid of $3,000, which amount was credited against the judgment of the bank. Thereafter the judgment against Eustace was duly satisfied by sales of other properties owned by him. Under the sale of lot 37 a certificate of the sheriff was issued to the bank and, no redemption having been made from such sale, a sheriff's deed as to the interest of Eustace in lot 37 was executed and delivered to the bank, and it was duly recorded.

In the meantime the mortgage of the California Bank became due and this bank commenced an action to foreclose the same, making all interested persons parties, including the bank holding the sheriff's certificate to an undivided one-half interest in lot 37 as above mentioned, and it filed a *lis pendens*. Thereafter a judment was rendered in favor of the California Bank, and an order for sale was issued under which the sheriff in due course sold lots 36 and 37 together, for the lump sum of $11,763.81, to the Bank of America, successor in interest of the Merchants National Bank, which held the sheriff's deed to John M. Eustace's interest in lot 37. The sheriff issued his certificate of sale, reciting that

the property was subject to redemption, and recorded a duplicate thereof. Thereafter plaintiff, Corporation of America, took an assignment of the certificate of sale and acquired the interest of the Bank of America in lots 36 and 37. Thereafter, on December 31, 1929, and prior to the expiration of the statutory redemption period on the mortgage foreclosure sale, defendant Lotta Wagner obtained a judgment against Katie M. Eustace. This judgment was docketed and recorded. Lotta Wagner then notified the sheriff of her intention to redeem from the mortgage foreclosure sale of the lots. She ascertained from the sheriff that the amount necessary for this purpose was $13,175.49, being the foreclosure sale price plus the statutory interest and costs, and deposited this sum with the sheriff, who thereupon issued his certificate of redemption to her. The sheriff notified the Bank of America, to whom he had previously issued the certificate of sale on the foreclosure, of the redemption by Wagner. Thereafter the Corporation of America, assignee of the certificate, made demand for a deed upon defendant Traeger, as sheriff of Los Angeles County and as the officer making the foreclosure sale of the lots, and that same be executed and delivered to plaintiff herein, as the holder of the sheriff's certificate of sale of said lots under the mortgage foreclosure sale, and as claimed owner of an undivided one-half interest in lot 37. Traeger refused; whereupon this action was brought.

The trial court concluded from the foregoing facts that Lotta Wagner, by reason of her redemption, was the sole owner of lots 36 and 37, and that plaintiff had no interest in the same, and that its only right was to receive the money paid by Lotta Wagner to the sheriff to redeem.

Plaintiff complains of the judgment for the reason that it has the effect of excluding the bank from its undeniable one-half interest in lot 37, which it acquired under its judgment against John Eustace, and for which it had paid $3,000 under its execution sale. It seems to be conceded that the property has increased in value since the sale. It may be said in passing that the bank could have protected its interest by bidding in lot 37 in which it had an interest, as it appears from the record that the sheriff offered the lots separately as the bank could have required him to do (Code Civ. Proc., sec. 694), but no bid was obtained under

this separate offer. Both lots were then sold to plaintiff for the lump sum stated, subject to redemption. For reasons best known to itself the bank preferred to purchase both lots, in one of which it had no interest whatsoever. It could also have purchased the prior outstanding and overdue mortgage held by the California Bank and, by tacking its judgment lien to it, insured the return of its $3,000 lien. Instead, plaintiff elected to purchase both lots after foreclosure.

In order to extricate itself from the position it finds itself in, it now claims as ground for reversal that Lotta Wagner under the facts of the case had no right to make a statutory redemption. This claim is based upon the contention that an owner or his successor in interest has the last and ultimate right of code redemption, and that once the title disposed of at the foreclosure sale rests in such original owner or his successor in interest, either through the making of an actual code redemption in the event some outsider has made the purchase, or by an original purchase at the sale itself, then the statutory right of redemption as such may no longer function, but all pre-existing rights of parties entitled to redeem then remain open, or reattach to the property as liens, in the same manner as though no sale under the mortgage had ever occurred. In other words, appellant argues that if the judgment debtor or his successor in interest purchase at the sale, this is the same or has the effect of a statutory redemption, and therefore is attended with the statutory consequences, to wit, the termination of the effect of the sale and restoration of the estate, with the resulting conclusion that any right of redemption is thereby terminated. The statute, sections 700a et seq. of the Code of Civil Procedure, admits of no such interpretation. Nowhere therein is it declared or even intimated that a purchase at execution or foreclosure sale amounts to a statutory redemption, with the resulting statutory consequences. The distinction between a purchase at an execution or judicial sale and a statutory redemption from such sale is fundamentally different.

The contention of appellant would seem to be a departure from its position under its pleading. The complaint alleges that it purchased at the foreclosure sale and is the owner of both lots, and that Wagner's statutory redemption was

ineffective for the reason that in redeeming she did not deposit with the sheriff the $3,000 paid at its own execution sale for John Eustace's undivided interest in lot 37. The prayer asks for a decree establishing plaintiff's title to both lots, denying any interest whatever in Wagner, canceling the certificate of redemption and sheriff's deed issued to her, and requiring the sheriff to issue a sheriff's deed to plaintiff. There is no suggestion in the pleading that plaintiff was not the purchaser and owner of both lots, or that the purchase was in effect a redemption under the statute.

The court found as a fact, as stated, that the Bank of America purchased at the foreclosure sale and thereafter assigned the certificate of purchase to plaintiff, and that Wagner was the owner of the property. This finding is fully supported by the facts. As above pointed out, there is nothing contained in the statute that in any manner indicates that a purchase by the owner or his successor at execution or foreclosure sale amounts in effect to a statutory redemption, with the resulting statutory consequences. ■ The statute gives a positive right to lienholders to purchase at a sale or to redeem. The redemption specified therein is not the sale spoken of. The purchase or the acquirement of the certificate of purchase, by one who has both the right to purchase and redeem, whether he be the debtor or a junior lienholder, is not a redemption and is not attended with the legal consequences of a redemption. Purchase and redemption are distinct and different in their nature and consequences.

One who elects to purchase is bound by his election. An encumbrancer cannot be permitted to play fast and loose as his interest may appear. What is done must determine whether it amounts to a redemption or not. ■ The debtor and other encumbrancer have a right to know with absolute certainty whether there has been a redemption, so that they can act accordingly. (*Streeter* v. *First Nat. Bank,* 53 Iowa, 177 [4 N. W. 915].) One holding a certificate of sale and claiming title thereunder is in no position to resist redemption by a creditor. (*Martin* v. *Sprague,* 29 Minn. 53 [11 N. W. 143].) Purchasing at a sale and receiving a certificate is a transaction wholly different in its nature and legal consequences from a redemption, and one should not be permitted, both against the fact and the allegations of his

complaint, to claim the benefit of a transaction of an essentially different nature. (*Shroeder* v. *Bauer*, 140 Ill. 135 [29 N. E. 560].) ■ A certificate of purchase is no evidence of a redemption and cannot perform that office, but is authority merely to demand a deed if the property be not redeemed, and a purchaser cannot transmute such a certificate into a certificate of redemption and thus acquire other and different rights under it. (*Lloyd* v. *Karnes*, 45 Ill. 62.)

■ Wagner, having redeemed as she had a right to do, acquired the complete title, and the trial court rightfully so held. (*Chauvin* v. *American State Bank*, 242 Mich. 269 [218 N. W. 788].) Under all these circumstances it cannot be said that the facts and circumstances show the transaction to be one other than it purported to be. Wagner had the statutory right to redeem, and in making such redemption she was bound to redeem the property as a whole or not at all. She exercised such right and thereby acquired full title to both parcels. (*Eldridge* v. *Wright*, 55 Cal. 531.) Nor could the sheriff increase her burden by demanding the $3,000 above referred to as a condition of her right to redeem. (*Doerhoefer* v. *Farrell*, 29 Or. 304 [45 Pac. 797].)

Considerable is said in the briefs of both parties concerning the equitable rule as to purchase by cotenants. Lotta Wagner was not a cotenant with the bank or anyone else in any property. She was a mere lienholder, and the principle of proportionate contribution has no bearing on her statutory right to redeem, concluding, as we do, that the transaction constituted a sale.

The judgment is affirmed.