[Civ. No. 13547. Second Dist., Div. Three. Sept. 23, 1942.]

L. J. ALLEN, Appellant, v. T. D. McGEE et al., Respondents.

Lucian J. Clarke for Appellant.

Heaney, Price, Postel & Parma and Clarence A. Rogers for Respondents.

BISHOP, J. pro tem.—The plaintiff appeals from a judgment denying him any relief, claiming that the trial court failed to take into account that the effect of a judgment in a previous action had been to establish the title to certain real property in him subject only to a number of liens. We have reached the conclusion that the prior judgment did not have the effect claimed for it by the plaintiff, and that he was rightly denied any relief.

Plaintiff framed his complaint in four counts, each having reference to a piece of real property in Santa Barbara County. In the first count it is alleged that on November 23, 1932, the defendant T. D. Webster executed his grant

deed conveying this property in fee to the plaintiff, and that the plaintiff is its owner subject only to certain liens. The judgment in the action which we are going to know as the McGee action was set forth in full, the same judgment that appears in part in the seventh paragraph of this opinion. Each of the succeeding counts incorporates by reference the allegations respecting the deed of November 23, and the contents of the judgment. The second count differs from the first in that it seeks a judgment in declaratory relief rather than one quieting plaintiff's title. In the third count the plaintiff complains that several of the defendants took possession of the property without plaintiff's consent and alleges that the value of the use and occupancy of the property is $250 per month. That the defendants have derived income and profit from their occupancy and should account to plaintiff is the burden of his fourth count.

The problem presented by this appeal is not complicated, but its setting may be said to be, and must be known properly to appraise appellant's position. One La Torre Webster died in August, 1928, possessed, among other assets, of some sixty acres of land in Santa Barbara County. By his will La Torre Webster provided that of the residue of his estate his daughter, Mary Beckstead, should receive a three-quarters interest, the remaining one-quarter to go to his son, T. Dean Webster. In April of 1930, while the estate was in the course of administration in the probate court, Los Angeles County, Mary Beckstead and Dean Webster agreed in writing between themselves that they should inherit equally, and that upon the distribution of the estate the former should receive the westerly half, Webster should receive the easterly half, of the real property to be distributed. Two other documents were executed during the period of the probate proceedings. The first was one which, if effective, would have served to transfer to Allen, the appellant-plaintiff, all of Webster's interest in the estate of his father. The second was a grant deed executed by Webster, designed to convey to Allen the real property referred to in the four counts of the complaint. This deed was dated November 23, 1932, recorded December 2, 1932, and the real property described in it by metes and bounds comprises a portion of the property distributed in the estate proceedings.

On December 19, 1932, an order of distribution was made in the Webster estate, decreeing that all the residue of the

real property of the estate, consisting of two separate parcels totalling about twenty-six acres (and for convenience's sake we shall hereafter refer to it as the twenty-six acres) should be distributed, three-quarters interest to Mary Beckstead and one-quarter interest to appellant-plaintiff. By explicit provisions, however, the decree left open for future determination the rights of Dean Webster's creditors, express reference being made to their right to question the assignment by which the one-quarter interest that was to be Webster's was distributed to Allen, and their right to insist that by virtue of his agreement with his sister Webster's interest in the estate amounted to a half interest.

Meanwhile another series of events was taking place which impinged upon those we have just related. On or before September 10, 1930, T. D. McGee had commenced an action against Webster, numbered 308600 in the Superior Court, Los Angeles County, for on that day the sheriff of Santa Barbara County attached all of Webster's interest in the real property, of which the twenty-six acres was at least a part. In October, 1930, McGee recovered a judgment against Webster in action No. 308600 for over $3,500; an abstract of the judgment was immediately recorded in Santa Barbara County. In February, 1932, the sheriff of Santa Barbara County, under a writ of execution issued in action No. 308600, levied upon all the interest of Webster in the twenty-six acres, which had already been attached, and a little over a year later, in March, 1933, sold that interest to McGee, the judgment creditor. Between the levy and the sale Webster had made the deed of November 23, 1932, already mentioned.

Just when the record before us does not disclose, and it does not matter, McGee brought an action in Santa Barbara County, which we shall hereafter call the McGee action. The first pleading we have is the Amended and Supplemental Complaint for Declaratory Relief, filed some time between June 19 and July 17, 1933, we infer, which would be before the expiration of the twelve months' period, during which there might have been a redemption from the execution sale. (Code Civ. Proc., §§ 701, 702.) As parties defendant in the amended and supplemental complaint we find Webster, Allen, Mary Beckstead, Southwestern Creditors Association, Burt Moore and some fictitiously named persons. In his complaint McGee set forth the facts we have stated in the

three preceding paragraphs and he added facts revealing several more judgment liens existing against any real property interests Webster might have in Santa Barbara County. He also attacked by appropriate allegations the assignment by Webster to Allen of Webster's interest in the estate, and the deed of November 23, 1932, by which Webster purportedly conveyed to Allen a part of the twenty-six acres, claiming them to be void because in fraud of creditors. The amended and supplemental complaint ended with a prayer upon some of whose terms the plaintiff in the present case places reliance. McGee asked first that the court determine his interest in the land described in the decree of distribution. (McGee was, perhaps we should note, not only the execution purchaser of whatever interest Webster had in the twenty-six acres, but he also had three judgment liens subsequent to the one which had been foreclosed.) Secondly, he prayed that the assignment and the deed from Webster to Allen, both be declared fraudulent and ineffective. Then he asked that Webster "be adjudged and decreed by this Court to have been possessed and entitled to the possession of the Easterly one half of the La Torre Webster Ranch, that is, the Easterly one half of the real property distributed in its Decree of Distribution by the Superior Court of the State of California, in and for the County of Los Angeles, at all times since the 19th day of December, 1932, subject, however, to: . . . To (sic) the rights of Plaintiff herein as a judgment creditor in said Action No. 308600 of the Superior Court of the State of California, in and for the County of Los Angeles, and as purchaser at execution sale thereunder on the 6th day of March, 1933.

"To the rights of Plaintiff herein as attaching creditor in Actions No. 296096, No. 296222, and Action No. 296380, respectively, in the Municipal Court of the City of Los Angeles, County of Los Angeles, State of California.

"To the rights of the Southwestern Creditors Association, a corporation, as holders of a judgment lien in said complaint particularly set forth and referred to.

"To all other claims by way of judgment lien or attachment which may be presented to this Court." There followed a further prayer that Mary Beckstead be declared the owner, since December 19, 1932, of the westerly half of the real property of the estate.

The McGee case came on to trial on February 27, 1934, (just before the expiration of the period of redemption in

action 308600), and during its course it was stipulated between Allen, McGee, Webster and Mary Beckstead, among others, that the interest of Mary Beckstead and of Webster in the twenty-six acres should each be deemed that of an undivided one-half interest, and that the westerly half of the twenty-six acres "should be set over" to Mary Beckstead, "free and clear of all liens and claims of this plaintiff and free and clear of all liens of other creditors of T. Dean Webster . . . and that the easterly one-half thereof be set apart to the defendant T. Dean Webster or his successors in interest whoever they might be held to be." Findings were then filed and a judgment entered April 23, 1934, in which it was decreed: that the deed of November 23, 1932, and the assignment, were fraudulent and that they be cancelled; that Allen did not have and never had had any interest in the twenty-six acres; that the interest of Mary Beckstead in and to the twenty-six acres "is that of an undivided half interest; that the interest of T. Dean Webster, or his successors in interest, is that of an undivided half interest;" that "there be set apart unto Mary Alice Beckstead the Westerly one-half [of the twenty-six acres] and unto T. Dean Webster, or his successors in interest the Easterly one-half thereof." Then appeared this subdivision: "That the order and priority of the several liens referred to in Plaintiff's Amended and Supplemental Complaint against the interest of T. Dean Webster in and to the real property particularly described in said paragraph sixteen of the Findings of Fact is as follows:

"(a)   That of Joseph Archambeault, accruing on the 21st day of August, 1929.

"(b)   That of T. D. McGee, in action No. 308600 in the Superior Court of Los Angeles County, accruing on Sept. 10th, 1930.

"(c)   That of T. D. McGee, in action No. 296096 in the Municipal Court of the City of Los Angeles, accruing on the 15th day of December, 1932.

"(d)   That of the Southwestern Creditors Association, a corporation, in action No. 195924 and later renewed in No. 352889 in the Superior Court of Los Angeles County, accruing on the 16th day of December, 1932.

"(e)   That of T. D. McGee in action No. 296380 in the

Municipal Court of the City of Los Angeles, accruing on the 17th day of December, 1932.

"(f) That of T. D. McGee in action No. 296222 in the Municipal Court of the City of Los Angeles, accruing on the 4th day of February, 1933.

"(g) That of Burt Moore in action entitled 'Moore vs. Webster, et al.,' in the Second Judicial Township Justice's Court of Santa Barbara County, accruing on the 6th day of February, 1933." From this judgment an appeal was taken by Allen and it was affirmed in *McGee* v. *Allen,* (1936) 7 Cal. (2d) 468 [60 P. (2d) 1026].

We now have a background against which plaintiff Allen's claim to have a cause of action may be examined. The first peg on which he hangs his right to recover is the explanation given by the Supreme Court of the judgment in the McGee case, contained in these words of the opinion's concluding paragraph (p. 476): "The findings and judgment that the transfer was void, and that Allen had no right, title or interest, in the light of the findings as a whole must be interpreted as an adjudication that the transfer was void as to respondents who are creditors of Webster. The transfer was good between the parties, . . ." This means, Allen now contends, that he was adjudged to be the owner of the premises described in his complaint, subject to the several liens set forth in the McGee judgment. To the question which immediately presents itself—what happened to Allen's title, void as to Webster's creditors, when the foreclosure sale was held to satisfy a judgment of one of those creditors? —Allen has a ready answer, and his case succeeds or fails, depending on the validity of this answer. His answer is that McGee, who bought the premises at the execution sale, by bringing his action, surrendered the title thus acquired, and that he emerged from his action with no title, but only four judgment liens, the title, subject to the liens of McGee and others, being in Allen.

This theory of his case the plaintiff presented to the court at the outset of the trial. The outcome was not a judgment of nonsuit on the opening statement, as at one time seemed imminent, but the case went to trial on its merits. Plaintiff introduced into evidence "the entire file" of the McGee action, which included, of course, the findings of fact, from whose extensive recitals we gathered most of the facts which we narrated in the early part of this opinion. As

Allen and McGee were adverse parties in the McGee action, the facts found in that action are binding on them in this one. (*Sutphin* v. *Speik*, (1940) 15 Cal. (2d) 195, 201 [99 P. (2d) 652, 656].) The few facts we narrated which we did not discover in the findings of the McGee action, came from admissions in the pleadings in the present action.

After the trial, which, but for statements and counter-statements of counsel, could not have occupied over fifteen minutes, although the record on appeal consists of almost five hundred typewritten pages, findings of fact were filed. Again it was found that the deed of November 23, 1932, was without consideration, made and accepted with the intent to defraud creditors. Reference was made to the finding in the McGee action that McGee, on March 6, 1933, purchased, at execution sale, the premises described in the complaint in the present action. It was concluded "that the plaintiff Allen has no right, title or interest in and to the property described in the complaint."

■ We are of the opinion that this conclusion of law was correct, and that the judgment which followed it, also declaring "that plaintiff has no right, title or interest whatsoever in or to the land or premises described in the complaint," and "that plaintiff is entitled to no relief herein," was in these particulars correct. When McGee purchased the property at the execution sale of March 6, 1933, he acquired the legal title of the premises Allen now claims. As stated in the headnote to *Judson* v. *Lyford*, (1890) 84 Cal. 505 [24 Pac. 286], and quoted in *Wangenheim* v. *Garner*, (1919) 42 Cal. App. 332, 334 [183 Pac. 670]: "A deed in fraud of creditors is absolutely void as against them, and an execution sale of the debtor's interest carries the legal title, and not an equitable interest merely." ■ This legal title is acquired at the sale and not by virtue of the sheriff's deed, which is not issued until the period of redemption has passed. (*Bateman* v. *Kellogg*, (1922) 59 Cal. App. 464, 472 [211 Pac. 46]; *Truelsen* v. *Nelson*, (1941) 42 Cal. App. (2d) 750, 755 [109 P. (2d) 996, 998].) The title so acquired might have been lost to McGee during the twelve months which followed March 5, 1933, by the redemption of the property from the execution sale of that date. (Code Civ. Proc., § 702.) Allen brought the present action on the 9th day of October, 1937, and he did not allege, nor is there any evidence or claim that McGee's title was lost by redemption. The absence of

competent evidence that the sheriff ever issued a deed to Mc-Gee after the expiration of a year (the repeated statements of Allen's counsel at the trial that such a deed had been issued not constituting competent evidence) does not affect the situation (*Leaver* v. *Smith*, (1920) 47 Cal. App. 474, 477 [190 Pac. 1050]); the sheriff's deed adds no title, but only serves as evidence that there has been no redemption. (See *Bateman* v. *Kellogg* and *Truelsen* v. *Nelson, supra*, in this paragraph.)

How, then, has McGee's interest slipped back from being a non-defeasible title to a mere judgment lien? Because, Allen argues, McGee brought his action, in which he prayed for a judgment which would, and he obtained a judgment which did, recognize that Webster had an interest in the property, and which recognized the existence of judgment liens, and this after Webster's interest had all passed to McGee, and after all the interest liens had been extinguished by the foreclosure sale to McGee. The effect of McGee's action, Allen argues, was to bring his title into a court of equity, and lay it on the chancellor's bench.

The fundamental weakness of appellant's position arises from the fact that while the words he uses correctly express one truth, they do not encompass all truth. At this phenomenon the plaintiff should not be surprised; the deed on which he relies was adjudged to be null and void, but yet to be good. Similarly, it is true that McGee acquired all of Webster's interest in the twenty-six acres (Code Civ. Proc., § 700) and in so doing wiped out junior liens (*Mitchell* v. *Alpha Hardware etc. Co.*, (1935) 7 Cal. App. (2d) 52, 57 [45 P. (2d) 442]; *Bank of America* v. *Hill*, (1937) 9 Cal. (2d) 495, 502 [71 P. (2d) 258]), yet the junior liens survive. They survive because section 701, Code of Civil Procedure, provides: "Property sold subject to redemption . . . may be redeemed . . . by the following persons . . .: 2. A creditor having a lien by judgment or mortgage on the property sold . . . subsequent to that on which the property was sold." For the purpose of determining who is a redemptioner, therefore, a lien which has been wiped out, still survives. Moreover, section 702, Code of Civil Procedure, in making provision for the possibility that Southwestern Creditors Association or Burt Moore (see judgment in McGee case) might redeem from the sale to McGee, takes into account that McGee not only had the title he secured as purchaser,

but also might have "a prior lien to that of the redemptioner, other than the judgment under which said purchase was made." But these liens that still exist, for some purposes, although they have been wiped out, were against Webster's interest in the property; no one had a judgment lien against McGee. So, it may be said, Webster still had an interest, although McGee had acquired it.

It follows that McGee did not surrender his title by bringing the action. He had at least three purposes in view, no one of them inconsistent with his retention of all that he had as purchaser at execution sale before the expiration of the period of redemption. (It must be remembered that the trial took place on the 27th and 28th days of February, 1934, and the judgment speaks as of no later a date. (*Segarini* v. *Bargagliotti*, (1926) 79 Cal. App. 347 [249 Pac. 545].) First of all, he desired to eliminate Allen from the picture by having his fraudulent assignment and deed characterized as such. Then he wished it adjudicated that he had purchased not an undivided one-quarter interest in the twenty-six acres, but the easterly half of them. Lastly, he desired to have the order of the parade of liens fixed, doubtless to avoid any uncertainty as to which of his liens would have to be taken care of if one of those holding a junior lien desired to redeem. To accomplish the last mentioned purpose it was but to conform to the terminology of the code sections to recognize the continued existence of Webster's interest, to which the several junior judgment liens clung for life. McGee did not lay his title in the chancellor's lap, nor, by the judgment which was entered, did the chancellor take McGee's title away from him. As to McGee, Allen never had a title; as to Allen, McGee had a good title, and the judgment appealed from correctly declared that Allen was entitled to no relief. Its failure to adjudicate in words that McGee was Webster's successor in interest is not to be interpreted as an adjudication that he was not.

It is true that the finding, repeated in the judgment, that the Butterfields were the owners of the easterly half of the twenty-six acres, has no support in the evidence, and no prayer for such an adjudication was made in their answer, but under the authorities it seems that the plaintiff is not aggrieved by this determination, without foundation though it is, for it is surplusage. (*California Pub. Improv. Securities* v. *Porter*, (1932) 121 Cal. App. 670, 674 [9 P. (2d)

877] ; *Warden* v. *Stoll,* (1930) 210 Cal. 374, 376 [291 Pac. 835] ; *Risso* v. *Crooks,* (1933) 217 Cal. 219, 221 [17 P. (2d) 1001].)

The judgment is affirmed.

Shinn, Acting P. J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 12, 1942.