[L. A. No. 23392. In Bank. Apr. 10. 1956.]

JOHN CLARK, Appellant v. C. C. CUIN, Respondent.

Dickenson, Sattinger & McKee, Dickenson & Sattinger and Wesley Dickenson for Appellant.

Charles F. Sturdevant, Jr., for Respondent.

SCHAUER, J.—In this quiet-title action defendant cross-complained and judgment was rendered in his favor, quieting his title as against plaintiff to some 80 acres of land in Imperial County. Plaintiff appeals. We have concluded that plaintiff's

various contentions are without merit and that the judgment should be affirmed.

According to the record, most of the facts are stipulated and the others appear to be undisputed. The land involved was acquired by the Imperial Horsemen's Association, a corporation (hereinafter called the association), in 1948. On November 18, 1949, the firm of Bratton and Sturges filed suit against the association and attached the land. Seven days later, on November 25, one Reams filed suit against the association and attached the same land. A judgment totaling $4,470.09 was entered in favor of Bratton and Sturges in May, 1950. A writ of execution was then issued on such judgment and the attached land was sold at execution sale on October 20, 1950, to plaintiff John Clark for the sum of $4,700. A certificate of sale was issued to Clark and recorded in Imperial County in November, 1950.

In April, 1951, a judgment in the sum of $679.63 was entered in favor of Reams and against the association, and an abstract thereof recorded in Imperial County.

On October 1, 1951, Reams assigned his judgment to the defendant herein, C. C. Cuin; the assignment recites a consideration of $650 paid to Reams. On October 11, 1951, Cuin, in order to effect a redemption of the land theretofore sold to Clark on the execution sale (see Code Civ. Proc., §§ 701-705),[1] delivered to Constable Keating, the selling officer at the sale at which Clark purchased the land, the following documents: A certified copy of the judgment entered in favor of Reams; a copy of the assignment of such judgment to Cuin, verified by Cuin's affidavit and showing the amount then actually due on the judgment; and a notice of redemption and cashier's check in the sum of $5,076 payable to Keating as constable.[2]

Notice of redemption was thereafter served on the sheriff of Imperial County and was recorded on October 13, 1951. On October 11, 1951, Constable Keating executed and delivered to Cuin a certificate of redemption, which was recorded October 13, 1951. (See Code Civ. Proc., § 703.)

Within a day or two following delivery by Cuin to Constable Keating on October 11, 1951, of the various redemp-

[1]Section 702 of the Code of Civil Procedure permits redemption within 12 months after the execution sale.

[2]Plaintiff raises no question as to the correctness or sufficiency of the redemption steps, as taken by Cuin. (See Code Civ. Proc., §§ 702, 704, 705.)

tion documents, including the cashier's check, the constable telephoned to Clark and told him that Cuin "as a creditor had redeemed the property that had been sold to him under execution and that he had put up sufficient funds with me to pay the amount that Mr. Clark had paid, plus the legal rate of interest . . . [Clark answered in substance] that it was O.K. with him that all he wanted was his money, and I said, 'Well, I have it here for you, Mr. Clark, do you want me to mail it to you or do you want to come after it?' and I don't remember what Mr. Clark said . . . [but] the substance of the conversation [was] that he would be in El Centro and pick it up." Clark did not call at the constable's office for the money and "several days" later Constable Keating, after first writing a check payable to Clark on his constable's bank account, went to Clark's home in Calipatria and personally tendered the check to him. During the conversation Constable Keating told Clark that "I had the check and asked him if he cared to accept the check, and he said he did not, for me to see his attorney, and I asked him who his attorney was and he said, 'Wesley Dickenson.'" The constable also told Clark the amount of the check and showed it to him, and Clark made no objection to the amount of the check or to the fact that the tender was in the form of a check, and did not demand any specific sum of money. Clark himself confirmed the above testimony of Constable Keating.

Pursuant to Clark's request, Constable Keating thereafter, on "Probably the same day," offered the check to Clark's attorney, Dickenson, who "took the check and looked at it, took the check number off of it, made notes from it, then handed it back to me." At the time of trial of this quiet-title suit the constable was still holding the funds he had tendered to Clark.

On October 18, 1951, the law firm of Dickenson and Cline tendered to Cuin the sum of $707.38 in payment of the Reams judgment which had been assigned to Cuin, and Cuin refused the tender. On October 19, 1951, Dickenson and Cline deposited that amount to Cuin's bank account in El Centro (Imperial County), and a duplicate deposit slip was mailed to him on the same date. Cuin transferred the funds to the trust account of his attorneys. Thereafter the association (the Reams-Cuin judgment debtor) filed a motion to compel entry of satisfaction of the Reams (Cuin) judgment and in August, 1952, the superior court made its order directing the clerk to enter satisfaction of such judgment. On appeal by Cuin the

order was affirmed. (*Reams* v. *Imperial Horsemen's Assn.* (1953), 119 Cal.App.2d 714, 716 [260 P.2d 125].)

On December 24, 1951,[3] Constable Keating executed and delivered a deed to the land to Cuin; the deed was recorded the same date. Thereafter Cuin ascertained from the tax assessor's office the amount of unpaid taxes against the land and paid all of such taxes, commencing with those for the year (1948) in which the association had purchased the land and continuing to the year (1952) in which the present suit was tried; such taxes totaled some $986.88.

Plaintiff-appellant, as the purchaser at the execution sale, first contends that Cuin, as holder of a judgment rendered after the execution sale, was not entitled under the provisions of section 701 of the Code of Civil Procedure to redeem the land from plaintiff. That section provides that redemption may be made "by the following persons, or their successors in interest:

"1. The judgment debtor, or his successor in interest, in the whole or any part of the property;

"2. A creditor having a lien by judgment or mortgage on the property sold, . . . subsequent to that on which the property was sold. The persons mentioned in the second subdivision of this section are, in this chapter, termed redemptioners."

Plaintiff concedes that the lien of a judgment which is entered prior to the date of execution sale under another or different judgment will qualify the holder of such judgment lien to be a redemptioner. He argues, however, that a purchaser at an execution sale receives "legal," rather than "equitable," title to the property sold, subject only to any statutory right of redemption, and that therefore the nature of the interest in the land which remains in the judgment debtor during the redemption period is not such as may be subjected to the lien of a judgment creditor who becomes such subsequent to the first execution sale. In other words, it is plaintiff's position that under subdivision 2 of section 701 the only judgment creditor who may qualify as a redemptioner is one whose judgment lien is subsequent in priority to the lien on which the property was sold, but whose lien came into existence at a time preceding the date of the execution sale, and that a creditor whose judgment is entered after the

[3]This was after expiration of the 60 days within which a second redemptioner may redeem from the first redemptioner. (See Code Civ. Proc., § 703.)

execution sale cannot by means of such judgment secure a lien on the property sold, so as to permit redemption under the terms of subdivision 2 of section 701, just quoted.

A similar issue was presented in the case of *Stetson* v. *Sheehan* (1921), 52 Cal.App. 353, 359-362 [200 P. 387], upon facts substantially parallel to those in the present case, and it was held, in a well reasoned and strongly documented opinion authored for the court by Mr. Justice Richards (later a distinguished member of this court) that the subsequent judgment creditor had the right to redeem the property from the execution sale. There one Rich recovered judgment against a realty company and certain land of the judgment debtor was then sold under execution to one Jordan, who thereupon transferred his rights in the land to Stetson. Rich subsequently filed another action against the realty company, recovered a second judgment, and within the statutory time took the required steps to redeem the land from Stetson. After expiration of the time for any further redemption the sheriff, Sheehan, issued his sheriff's deed to Rich. Stetson sued both the sheriff and Rich, seeking to quiet title against the latter and to compel the sheriff to deed the land to Stetson. On appeal the judgment rendered in Stetson's favor by the trial court was reversed. The discussion of the contentions advanced, and the ruling on appeal, is in material substance as follows (pp. 359-362 of 52 Cal.App.): ''The remaining question . . . has reference to whatever rights, as a judgment creditor of the Moss Beach Realty Company, . . . Rich acquired by said recordation of the transcript [abstract] of his judgment in San Mateo County with relation to the property of said corporation in said county which had already been sold under execution to the predecessor in interest of the plaintiff herein. It is the contention of the respondent [Stetson] herein that said Rich did not become invested with any right to redeem said property from said prior execution sale by the doing of the aforesaid acts. This contention is based, in part at least, upon the respondent's construction of the provisions of section 674 of the Code of Civil Procedure having relation to the effect of the filing for record of the transcript of a judgment in a county wherein the judgment *creditor* [debtor] has an interest in real property. . . . The respondent . . . argues that the judgment so filed . . . becomes thereby a lien upon the real property of the judgment debtor which is 'owned by him at the time, or which he may afterward, and before the lien expires, acquire'; and that

in the instant case the judgment debtor did not own the real estate to which it is sought to have said judgment lien attach, for the reason that all of the said judgment debtor's right, title, and interest in said property had been theretofore sold at said execution sale.

"We think that this is altogether too narrow a construction to place upon the provisions . . . of the code in so far as they purport to create a lien upon the real property or an interest therein of a judgment debtor. The same precise language is employed in section 671 of the Code of Civil Procedure, in relation generally to judgment liens; and to hold that a judgment creditor filing his transcript of judgment in another county did not thereby acquire a lien upon such of the real property of the judgment debtor as had theretofore been sold at an execution sale but which was still subject to redemption, would be to hold in effect that no judgment creditor having such subsequent judgment could acquire such a lien or become a redemptioner of property which had been subjected to such prior execution sale but which was still open to redemption. To so hold would be to nullify the provisions of subdivision 2 of section 701 relating to the redemption of real property from execution sale. . . . [T]he supreme court has in numerous cases expressly recognized the rights of judgment creditors becoming such after execution sales to redeem the property of the judgment debtor from such sales. The following are some of these cases: *Bennett* v. *Wilson* [1898], 122 Cal. 509 [55 P. 390, 68 Am.St.Rep. 61]; *Id.* [1901], 133 Cal. 379 [65 P. 880, 85 Am.St.Rep. 207]; *Woods* v. *Kellerman* [1906], 3 Cal.App. 422 [89 P. 358]; *McMillan* v. *Richards* [1853], 9 Cal. 365. . . . It is our conclusion, therefore, that the junior judgment creditor Rich had the right to redeem the property in question . . . [and] a right to demand and receive from the sheriff the deed to the premises which was issued to him. . . ." The judgment was reversed with directions to enter judgment in accordance with the holding. This court denied a hearing. (See *Cole* v. *Rush* (1955), 45 Cal.2d 345, 351 [289 P.2d 450].)

Subsequent cases recognizing and seemingly following, without expressly so holding, the rule so carefully elucidated in the Stetson case, are *Corporation of America* v. *Eustace* (1932), 217 Cal. 102, 105, 108 [17 P.2d 723] [subsequent judgment creditor held to have a right to redeem from prior mortgage foreclosure sale]; *Lawler* v. *Gleason* (1955), 130 Cal.App.2d 390, 397 [279 P.2d 70]; and *Allen* v. *McGee* (1942), 54 Cal.App.2d 476, 484 [129 P.2d 143].

*Helvey* v. *Bank of America* (1941), 43 Cal.App.2d 532 [111 P.2d 390], relied upon by plaintiff, turns upon the effect of statutes concerning tax deeds to the state, and its attempted distinction of the Stetson case with the remark that (p. 537), "In that case, it is clear that the vested title was in the judgment debtor at the time of the recordation of the lien [abstract of the second judgment]," is untenable and of no persuasive effect. The real purport of the Stetson opinion, as is clear from the portions thereof quoted hereinabove, is that whether the interest remaining in the judgment debtor after the execution sale be regarded as "legal" or as "equitable" in nature,[4] it is nevertheless such an interest as may be reached by a subsequent judgment creditor who seeks to become a redemptioner under section 701.[5] Such holding is the firmly established law of this state. Furthermore, in view of the contentions made by plaintiff on this appeal, it may be added that the holding not only accords with the plain intent of the statute as evidenced by the language thereof, but also is fair and equitable in that it affords to creditors of the judgment debtor, who have recovered judgment based necessarily upon the establishment of a legally supportable claim against the debtor, rights to the debtor's interest in property sold under execution which judgment creditor rights are at least on a par with those of purchasers who acquired the property at a distress, i.e., execution, sale. It follows that Cuin, as the junior judgment creditor of the association, had the statutory right to redeem the land from plaintiff, the execution sale purchaser. Various other cases also relied upon by plaintiff involve factual situations differing to such an extent from the present case that no useful purpose would be served by discussing them. (See *Robinson* v. *Thornton* (1893), 102 Cal. 675 [34 P. 120] ; *People*

[4]See *Noble* v. *Beach* (1942), 21 Cal.2d 91 [130 P.2d 426]; *Shintaffer* v. *Bank of Italy* (1932), 216 Cal. 243, 247 [13 P.2d 668]; *Elbert, Ltd.* v. *McKenna* (1953), 116 Cal.App.2d 480, 483 [254 P.2d 107]; *Truelsen* v. *Nelson* (1941), 42 Cal.App.2d 750, 755 [109 P.2d 996].

[5]See also section 700 of the Code of Civil Procedure: "Upon a sale of real property, the purchaser is substituted to and acquires all the right, title, interest, and claim of the judgment debtor thereto on the date of the levy of the execution thereon, where such judgment is not a lien upon such property; if the judgment is a lien upon the real property the purchaser is substituted to and acquires all the right, title, interest, and claim of the judgment debtor on or at any time after the day such judgment became a lien on such property; and in case property, real or personal, has been attached in the action, the purchaser is substituted to and acquires all the right, title, interest and claim of the judgment debtor on or at any time after the day the attachment was levied upon such property."

v. *Irwin* (1859), 14 Cal. 428; *Haskins* v. *Certified Escrow & Mortgage Co.* (1950), 96 Cal.App.2d 688 [216 P.2d 90].)

 Plaintiff next contends that even if Cuin qualified as a redemptioner on the date (October 11, 1951), on which he took the statutory steps to effect a redemption, nevertheless the subsequent tender to Cuin (on October 18, 1951), of the amount owing on the Reams judgment, and the entry of satisfaction of such judgment, in some fashion operated to retroactively dissolve away Cuin's rights as a redemptioner. Such contention is without merit. The most that can be said of the result of such payment of the Reams judgment (seemingly carried out on behalf of the association rather than of the execution sale purchaser, plaintiff herein, although both the association and plaintiff are advised by the same counsel), is that the amount required to be paid to Cuin by a second redemptioner would be to that extent diminished. (See Code Civ. Proc., § 703; *Lawler* v. *Gleason* (1955), *supra,* 130 Cal.App.2d 390, 399; *Allen* v. *McGee* (1942), *supra,* 54 Cal.App.2d 476, 485.) As already above indicated, Cuin paid out $5,076 to effect redemption from Clark, as well as some $986 in taxes levied against the property, and his rights cannot, either under the statute or equitably, be defeated by the mere tender or payment of only the amount of the judgment lien ($707.38 total) held by him at the time he redeemed. Under the terms of section 701 either the association or plaintiff could have redeemed from Cuin by following the prescribed statutory steps, and no theory is suggested for permitting the statute to be circumvented in the manner here attempted by plaintiff Clark.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor J., Spence, J., and McComb, J., concurred.