[Civ. No. 5658.   Fourth Dist.   May 19, 1958.]

ROY C. KAISER et al., Appellants, v. MARGARET MANS-
FIELD, Defendant and Respondent; CLARA HOLE-
CHECK, Intervener and Respondent.

Roy C. Kaiser, in pro. per., and Roland T. Williams for Appellants.

Thomas A. Wood, Larwill & Wolfe and Borton, Petrini, Conron & Brown for Respondents.

BARNARD, P. J.—This is an appeal from a decree quieting title to 640 acres of land in the defendant and the intervener.

On July 12, 1948, Joseph S. Lees secured an option to buy this land from J. W. Eddington for a purchase price of $57,600. He gave his check for $1,000 for the option, and on July 16 he secured $1,000 from Margaret Mansfield for the purpose of covering that check. On August 24, he got an additional $1,000 from Mrs. Mansfield and $2,500 from

Clara Holecheck. Under a contract dated August 20, 1948, Eddington agreed to sell this land to Lees for $57,600, the total down payment being $3,800. On October 25, 1949, Lees assigned this contract to a Mrs. Fisher, with whom he had been closely associated for several years. On August 8, 1950, Mrs. Fisher transferred the contract to J. A. Long, whose wife was a sister of Lees.

On March 7, 1951, Mrs. Holecheck filed an action in the municipal court on a note for $2,500 which she had received from Lees on April 16, 1949. On the same day, March 7, Mrs. Mansfield filed an action for $2,000 on an account stated. Judgment in favor of Mrs. Holecheck for $2,750 and costs was entered on October 10, 1951, and another judgment for $2,360.14 and costs was entered in favor of Mrs. Mansfield on November 27, 1951. On December 15, 1952, the sheriff of Kern County levied an execution issued in *Mansfield* v. *Lees* on the interest of Lees in and to this land. On December 19, 1952, a similar execution was levied in connection with *Holecheck* v. *Lees*. On January 5, 1953, Mrs. Holecheck assigned her judgment against Lees to Mrs. Mansfield for the purpose of collection. On January 19, 1953, the sheriff sold all the interest of Lees in this land to Mrs. Mansfield for $2,550.77, being the full amount due under the judgment in *Mansfield* v. *Lees*. Ten minutes later on the same day, and pursuant to the execution in *Holecheck* v. *Lees,* the sheriff sold all the interest of Lees in this land to Mrs. Mansfield, as assignee, for $3,065, being the full amount due under that judgment. On February 11, 1953, both of these judgments were satisfied of record.

On August 13, 1953, J. A. Long and his wife assigned the contract for this land to these appellants for a purported consideration of $4,000, and Kaiser gave Long $1,000 and a note for $3,000. The $1,000 never went into any bank account of Long, and Kaiser later cancelled the $3,000 note. On December 22, 1953, Lees and his wife gave these plaintiffs a quitclaim deed and an assignment of their right to redeem this 640 acres "from execution Sale or Sales heretofore made in respect to said real property." On December 23, 1953, Kaiser notified the sheriff of his desire to redeem this 640 acres from the sale under the execution issued in the case of *Mansfield* v. *Lees*. In his affidavit he stated that he and his wife "as successors in interest of Joseph S. Lees" desired to redeem this property "from said sale." The sheriff notified Mrs. Mansfield's attorney of this application to redeem and the

attorney notified the sheriff that the land had also been sold on the same day in the case of *Holecheck* v. *Lees,* and that the amount necessary to redeem from that sale was $3,065.99. On January 21, 1954, the sheriff issued to these plaintiffs a certificate of redemption, in which it was recited that the Kaisers had paid him $2,821.52, being the full amount necessary to redeem from the sale under the execution issued in the case of *Mansfield* v. *Lees.* No redemption was made or attempted in connection with the sale under execution in the case of *Holecheck* v. *Lees.* Thereafter, on March 18, 1954, the sheriff issued a deed to Mrs. Mansfield under and pursuant to the execution sale under the judgment in *Holecheck* v. *Lees.*

A deed conveying this 640 acres from the Southern Pacific Land Company to "the heirs or devisees of J. W. Eddington, Deceased" was recorded on May 12, 1954. On the same day an administrator's deed was recorded conveying 140 acres, being a part of the 640 acres in question, to these plaintiffs. This deed recited that it was made pursuant to an order of court in the Estate of J. W. Eddington, Deceased, authorizing the execution of this deed on the payment of $4,000; that this amount had been paid; that the court's order was made to carry out the agreement made by J. W. Eddington on August 20, 1948, in favor of Joseph S. Lees; and that the purchaser's interest under said agreement was subsequently assigned to Elmira Fisher, who had since assigned the same to Roy C. Kaiser and Geraldine C. Kaiser.

On May 20, 1954, the plaintiffs filed this action to quiet title to the 140 acres described in the administrator's deed. The complaint was in the ordinary short form, naming Mrs. Mansfield and three Does as defendants. Mrs. Mansfield answered and filed a cross-complaint and Mrs. Holecheck filed an answer and a complaint in intervention, each claiming an interest in the entire 640 acres. The court found in favor of the two women, held that they were the owners of the contract covering the whole 640 acres, and entered judgment to that effect. On appeal that judgment was reversed. (*Kaiser* v. *Mansfield,* 141 Cal.App.2d 428 [297 P.2d 98].) This court held that while it clearly appeared that the initial payments on the option and contract were made by Lees with funds advanced by Mrs. Mansfield and Mrs. Holecheck, they had elected to pursue a remedy which was inconsistent with the trust theory upon which the findings and judgment were partly based. It was further stated that the parties should be allowed to amend their pleadings and that, except for the

elimination of the trust theory, there was no intention to limit the scope of an inquiry into the facts or equities of the case upon retrial. It was also pointed out that the effect of the execution sale in the case of *Holecheck* v. *Lees* would depend upon what title Lees had in the realty on the date of that sale, and that it would appear that if Lees had any interest at the time of the first sale that interest, having been restored by the redemption from that sale, could be reached and effectively disposed of at the second sale, with the result that Mrs. Mansfield would obtain good title through her purchase in the sale under *Holecheck* v. *Lees,* as confirmed by the sheriff's deed.

Subsequently, an amended cross-complaint and an amended complaint in intervention were filed by which the two women sought to quiet their title to their respective interests in the entire 640 acres of land. After a trial the court found, among other things, that Lees transferred this contract to Mrs. Fisher without consideration and with intent to defraud his creditors and while he was insolvent; that at that time Mrs. Mansfield and Mrs. Holecheck were creditors of Lees; that thereafter Lees caused Mrs. Fisher to transfer said contract to Mr. and Mrs. Long, his sister and brother-in-law, without consideration and with intent to defraud his creditors; and that the transfers by Lees to Fisher and by Fisher to the Longs were void as against the creditors of Lees. With respect to the execution sales it was found that Lees was the owner of the property at that time; that the sheriff issued to Mrs. Mansfield a certificate of sale pursuant to the execution in the action of *Mansfield* v. *Lees*, and another certificate of sale pursuant to execution in *Holecheck* v. *Lees*; that subsequent to the issuance of said certificates of sale Mrs. Mansfield conveyed a one-half interest in said property to Mrs. Holecheck; that on December 23, 1953, these plaintiffs, as successors in interest of Lees, redeemed said property from the execution sale in *Mansfield* v. *Lees* for the sum of $2,831.52, and the sheriff issued to them a certificate of redemption from said sale; that no redemption was made by anyone from the execution sale in *Holecheck* v. *Lees;* that after the time for redemption expired and on March 18, 1954, the sheriff issued his deed to Mrs. Mansfield, the purchaser at the execution sale in *Holecheck* v. *Lees*; and that said deed was recorded on March 23, 1954. Further findings were made to the effect that Mrs. Mansfield and Mrs. Holecheck are the owners each of an undivided one-half interest in the entire 640 acres, and

that these plaintiffs do not have any right, title or interest in or to said real property, or any part thereof. Among the conclusions of law it was found that Mrs. Mansfield and Mrs. Holecheck are entitled to have their title to said property quieted as against these plaintiffs and all persons claiming under them upon their depositing in court, for the benefit of these plaintiffs, the sum of $2,831.52 paid by the plaintiffs to redeem the property from the first sale. Judgment was entered accordingly, and the $2,831.52 was deposited with the clerk. The plaintiffs have appealed from that judgment.

The record is voluminous and it would serve no useful purpose to consider in detail the many technical points raised by the appellants. It clearly appears from the record that the respondents advanced the money used by Lees in making the initial payments on this option and contract; that they thought and were led by Lees to believe that they were not merely making a loan but were buying an interest in real property; that their later actions in attempting to get their money back, by seeking the aid of the district attorney's office and by filing suits, were caused by Lees' statements to them that he had transferred the contract to an innocent third party and that he was unable to give them any evidence of their interest in the land or to repay them, and by statements made to them by both Lees and Kaiser to the effect that if they did not accept a settlement then proposed by Lees he would go into bankruptcy and they would get nothing. It also clearly appears that Lees was closely associated with the parties involved in the various transfers of this contract, and the evidence justifies the inference that Kaiser had full knowledge of the various transactions. He took a considerable part in the efforts of Lees to settle with the two women, and represented Lees in connection with the investigation being made by the district attorney. Kaiser was an attorney and Lees a real estate broker, their offices were in the same suite, and Lees was handling a subdivision for Kaiser. Mrs. Mansfield was a stenographer in the same suite and performed some services for both of them. Mrs. Fisher had been a close associate of Lees for many years, and Long was his brother-in-law. The evidence would amply support a recovery on the trust theory had that theory not become unavailable for the reason pointed out in the prior decision. The controlling issues on this appeal are as to whether the findings to the effect that the transfers of this contract from Lees to Mrs. Fisher and from Mrs. Fisher to the Longs were made or caused by Lees with an intent

on his part to defraud his creditors are sustained by the evidence; and as to whether the redemption by Kaiser from the execution sale in the case of *Mansfield* v. *Lees* had the legal effect of wiping out the subsequent execution sale in the case of *Holecheck* v. *Lees*.

It was proved that Lees had only $5.67 in his bank account when he gave a check for $1,000 for an option to buy this property, and the total initial payments on this $57,600 deal were considerably less than the amounts he received from the respondents. During the times these transfers were being made the respondents were pressing him and the district attorney's office was investigating the matter, he was telling the respondents that he could not give them the property as he had transferred it to an innocent third party, and he and Kaiser had both threatened that he would go into bankruptcy. The testimony of Mrs. Fisher was that the only transaction she had with Lees concerning this property was that she had accepted the property "as a surety of money that I loaned Mr. Lees." She later said that she had cancelled a loan she had made to Lees amounting to $2,275.45, and loaned him $200 more when she took an assignment of this property; that she had previously loaned Lees $207.45 in 1948 and that the rest was a loan to a man named Popkin which Lees had orally guaranteed. She explained that at the suggestion of Lees she loaned $2,000 to Popkin in 1944, taking a chattel mortgage on a boat; that of this $2,000, $300 to $500 was by check and the rest was cash which she had in the house; that Popkin paid $800 on the loan in 1945, and she had not heard anything about him since; that she never saw the boat; and that she turned the chattel mortgage papers over to Lees, but she could not remember whether she signed anything or not. She said Kaiser had previously filed an action for her against Popkin; that Kaiser got service on Popkin in 1952 and was trying to collect from him after she had transferred the mortgage to Lees; that she did not tell Kaiser that she had transferred the note and mortgage to Lees; and that she did not tell him that she had purchased this property from Lees and had transferred the Popkin mortgage as part of the consideration. She also said she had sold this contract to Long for $1,000, but did not put the money in a bank; that she took a loss of $1,207.45 on the property; that Lees was present when Long bought the property from her, and made out the papers; and that Lees charged her no commission "on account of I was taking a loss anyway." She also said that when Lees

sold her the property he told her he had about $4,000 invested in it; that she had no title search made and did not check to see if the taxes were paid; and that she could not recall whether she had ever notified Eddington that she had bought the contract or that she had sold it.

Long's testimony is that he did not see this property until after he had bought it from Mrs. Fisher, and that he paid her $1,000 in a cashier's check which he purchased with money he had kept hidden in his home. It appeared that he was working for wages, that he had never had a bank account, and his wife said she had never known that he had any amount of money in the house. Long also said that Lees handled both transactions, when he bought the property from Mrs. Fisher and when he sold it to Kaiser, and that Kaiser paid him $1,000 and gave him a note for $3,000 which he later refused to pay and the note was cancelled. Lees testified, among other things, that when he transferred the property to Mrs. Fisher she gave him the Popkin note and papers, that he did not have her endorse the note over to him because "I knew it was no good, anyway"; that his obligation to Mrs. Fisher on the Popkin deal was merely a moral obligation; that he did not really owe the money but "when he didn't pay it, I figured I owed it"; that he did not give preference to anybody but "I couldn't pay it all"; and that, although he could not pay his debts, he was not insolvent since he had not gone into bankruptcy. Kaiser testified that he drew the original contract when Eddington sold the land to Lees; that when he bought the contract from Long he paid him $1,000 and gave him a note for $3,000; that the note was later cancelled and he got it back; and that he had an agreement to either pay Long $2,500 or deed him five acres of the land when title to the land was cleared.

The evidence indicates that neither Mrs. Fisher nor Long were in a position to handle a deal of this size, and justifies an inference that Lees knew that they never intended to do so. Aside from the general circumstances shown by the evidence, the testimony of these witnesses was evasive, contained contradictions, and was sufficient in itself to show why it was not accepted at its face value by the court. The evidence, with the inferences that could reasonably be drawn therefrom, was amply sufficient to sustain the findings to the effect that this property was transferred by Lees with intent to defraud his creditors, and that he manipulated and controlled its further transfers for the same purpose. The evidence also

justifies the inference that Kaiser was not an innocent purchaser, that he knew the material facts throughout these transactions and rendered assistance in some of them, and that all of these parties cooperated at various times in concealing the interest of Lees in this property.

With respect to the redemption made by Kaiser, the appellants contend that by this redemption from the first execution sale they acquired all rights which Lees had in the property, leaving no interest in Lees which could be reached or which was affected by the sale in *Holecheck* v. *Lees*. It is argued that the execution in *Mansfield* v. *Lees*, having been levied first, was the senior execution lien and the lien in *Holecheck* v. *Lees* was the junior lien; that the first sale of the property pursuant to the senior lien wiped out the junior lien; that as successors in interest of Lees through the quitclaim deed they redeemed the property from the sale under the senior lien; and that any claim that might have otherwise existed under the execution sale in *Holecheck* v. *Lees*, involving the junior lien, was thus extinguished. They cite *Allen* v. *McGee*, 54 Cal.App.2d 476 [129 P.2d 143]; *Mitchell* v. *Alpha Hardware etc. Co.*, 7 Cal.App.2d 52 [45 P.2d 442] and *Bagley* v. *Ward*, 37 Cal. 121 [99 Am.Dec. 256], as supporting the proposition that a creditor who purchases a debtor's interest in property at an execution sale acquires all of the debtor's interest and wipes out all junior liens, except that the junior liens may survive for the purpose of determining who is a "redemptioner," and that after such a sale on a prior execution the junior lienholders can look only to the proceeds after the first judgment has been satisfied. These cases all involved sales to a *creditor* who claimed under a senior or prior lien. There is a wide difference between a redemption made by such a creditor, with its effect on the rights of other redemptioners, and a redemption by the judgment-debtor or his successor in interest. A redemption by the judgment-debtor terminates the particular sale in which that redemption is made and restores the estate of the judgment-debtor. Section 701 of the Code of Civil Procedure provides that redemption may be made by a creditor having a lien or by the judgment-debtor or his successor in interest. Section 703 specifically provides "if the debtor redeem, the effect of the sale is terminated, and he is restored to his estate."

A redemption by the judgment-debtor's "successor in interest" has the same effect. (*Bateman* v. *Kellogg*, 59 Cal. App. 464 [211 P. 46].) This view is supported by much of

the reasoning used in *Clark* v. *Cuin*, 46 Cal.2d 386 [295 P.2d 401]; *Bristol* v. *Hershey*, 7 Cal.App. 738 [95 P. 1040]; *Huling* v. *Seccombe*, 88 Cal.App. 238 [263 P. 362]; *Stetson* v. *Sheehan*, 52 Cal.App. 353 [200 P. 387] and *Salsbery* v. *Ritter*, 48 Cal.2d 1 [306 P.2d 897].

■ Whether the statement in the prior decision in this case, to the effect that if Lees had an interest in this property at the time of the first sale his title would be restored by the redemption from that sale which would serve to develop a good title in Mrs. Mansfield through the sale in *Holecheck* v. *Lees*, is to be considered as the law of the case need not be decided. In any event, our view as to the law applicable to the situation which now appears is in accord with the suggestion there made. We see nothing in sections 701 to 703 of the Code of Civil Procedure which supports the appellants' contention in this regard, and we find no case justifying or compelling such a conclusion. These statutes were designed to protect the redemption rights of various parties, not to relieve the judgment-debtor from the payment of his just debts. When a redemption is made by a creditor the junior lien which is wiped out does not represent a debt which is owed by the redeeming creditors. There would be no justice, however, in permitting a judgment-debtor to redeem from a first execution sale and thereby cancel and wipe out his obligation on other execution liens covering debts which he also owes. We cannot construe these statutes as having that effect and as leading to such a result. The same rule would apply where the redemption from the first sale is made by the "successor in interest" of the judgment-debtor who stands in his shoes, and is entitled only to the same rights. We hold, therefore, that Kaiser's redemption from the sale in *Mansfield* v. *Lees* had the effect of restoring an interest in this property in Lees under the circumstances which here appear, and that it did not adversely affect or extinguish the subsequent execution sale in *Holecheck* v. *Lees*. There was no redemption from that sale and the sheriff's deed in that connection conveyed any interest which Lees had at the time of the sale in *Mansfield* v. *Lees*. The evidence supports the essential and controlling findings made by the court.

■ The other points raised by the appellants, with two exceptions, require no consideration. It is claimed that the court should have required the respondents to repay to the appellants the $4,000 which had been paid to the Eddington Estate for a deed to a portion of the property after the redemption

from the first execution sale. At the hearing on a motion for a new trial the court expressed great doubt with respect to what was required in that connection. Through the second execution sale the respondents acquired only such rights as Lees then had. The $4,000 thereafter paid not only increased the value of what the respondents had received but it resulted in giving a clear title to 140 acres of this land. The effect of this payment was similar to that where a redemptioner pays off an encumbrance on the property, and in this action in equity a repayment of that amount should have been allowed and provided for.

The appellants also contend that the court erred in permitting the filing of an amended cross-complaint and amended complaint in intervention since they involved the quieting of title to the entire 640 acres whereas the complaint in the action involved only 140 acres of that land. We see no error in this connection. (*H. & J. Mabury Co.* v. *Bryant*, 9 Cal.2d 586 [71 P.2d 1111]; *Hanlon* v. *Western Loan & Bldg. Co.*, 46 Cal.App.2d 580 [116 P.2d 465].) In any event, the appellants are in no way prejudiced.

The judgment is modified by changing the first clause of Paragraph III thereof so that the same shall read: "The cross-complainant Margaret Mansfield shall deposit the sum of $2,831.52, and Margaret Mansfield and Clara Holecheck shall deposit the additional sum of $4,000.00, with the Clerk of the above entitled court for the use and benefit of and payment to the plaintiffs Roy C. Kaiser and Geraldine V. Kaiser." As so modified, the judgment is affirmed, each party to pay his own costs on appeal.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied June 16, 1958, and appellants' petition for a hearing by the Supreme Court was denied July 16, 1958.